102 N.J. Super. 407 (1968)
246 A.2d 78
STATE BOARD OF MEDICAL EXAMINERS OF NEW JERSEY, PLAINTIFF,
v.
WARREN HOSPITAL, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, District Court, Warren County.
Decided June 27, 1968.
*410 Mr. Howard M. Kaplan, Deputy Attorney General, for plaintiff (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. James V. Tirrell, Jr. for defendant.
BRY-NILDSEN, D.C.J.
This appears to be a case of novel impression. Plaintiff sues for a penalty alleging that defendant, a non-profit corporation, violated N.J.S.A. 45:9-22 during the year 1966 and other times, by employing, for a stated salary, one Walter K. Peters, M.D., an unlicensed individual, to practice medicine during such times at its hospital in Phillipsburg, New Jersey.
The evidence clearly showed that during the period in question, Dr. Peters was a physician licensed to practice medicine by the Commonwealth of Pennsylvania, but not so licensed in New Jersey. A letter contract, dated April 13, 1965, between defendant and Dr. Peters, provided among other things that Dr. Peters was to be "Director of Medical Education and Emergency Room Physician." Referring to Dr. Peters, the letter provided, passim: "your major responsibility will be the complete Medical Education Program of Warren Hospital in all phases * * * Your other major responsibility will be Emergency Room Physician. This responsibility will no doubt utilize most of your time, however, not to the point of neglecting the Educational Program. Your work week will be five and one-half days subject to being available for emergency call * * *. Your salary will be $12,000 per year effective April 1, 1965 and $13,500 when you are licensed."
Voluminous patient case records produced by plaintiff from the defendant's files clearly show the diagnosis and treatment of a large number of patients at Warren Hospital during 1966 by Dr. Peters, in his capacity as an hospital employee. In the interest of shortening the trial, defendant's counsel stipulated that Dr. Peters was practicing medicine within the definition of that term contained in N.J.S.A. 45:9-5.1 (as *411 an employee of Warren Hospital) during the year 1966. There is no doubt, therefore, that defendant, Warren Hospital, employed for a stated salary, $12,000 per year, Walter K. Peters, M.D., a person not regularly licensed to practice medicine in this State, to practice medicine therein, that Dr. Peters did in fact practice medicine as such employee in Warren Hospital during the year 1966. This conduct clearly would constitute a violation by defendant of N.J.S.A. 45:9-22 unless, as contended by the defendant, the statute does not apply.
Defendant makes two points in its contention that N.J.S.A. 45:9-22 does not apply: first, that the conduct of Dr. Peters was excepted from the operation of N.J.S.A. 45:9-22 by the terms of subsection (c) of N.J.S.A. 45:9-21; and second, that the Legislature never intended N.J.S.A. 45:9-22 to apply to bona fide approved hospitals, and to the professional conduct of its staff physicians, since such personnel were subject to supervision by the hospitals wherein they are employed. N.J.S.A. 45:9-21 (c) provides "The prohibitory provisions of this chapter (N.J.S.A. 45:9-1 et seq.) shall not apply to the following ...
c. A physician or surgeon of another State of the United States and duly authorized under the laws thereof to practice medicine or surgery therein, if such practitioner does not open an office or place for the practice of his profession in this State," (Parenthetic reference to N.J.S.A. 45:9-1 et seq. supplied)
To permit defendant to develop factual support for its first contention, the court admitted testimony from which it appeared that Dr. Peters had no special office; and kept no patient records apart from the hospital case records; had no professional sign giving notice to the public of his availability for professional services independent of those rendered as an employee of the defendant; had no separate telephone listing; and was in all of his activities subject to the rules, regulations and by-laws of the defendant.
*412 Incidental to defendant's second point of contention, the court allowed defendant to produce its By-laws to demonstrate that at Warren Hospital the Out-Patient Department (Emergency Room) was supervised by a committee of the Medical and Dental Staff, that Warren Hospital is a properly organized independent non-profit association of this State; that it is fully accredited and approved by the Joint Commission on Accreditation of Hospitals, a national organization; and that it follows accepted procedures in its business practices and that its medical and surgical personnel and facilities are under the supervision of a qualified and competent professional staff. The echelons of professional management and supervision were outlined in testimony from which it would appear that the work of Dr. Peters was subject to control and supervision by the Medical and Dental Staff and its Committee with regard to his Emergency Room service, and while not clearly stated, it might be assumed that his work as Director of Medical Education would also be subject to some staff regulations. In passing, it might be said in fairness to the defendant and to Dr. Peters, that from all of the evidence it was abundantly clear that Dr. Peters discharged his responsibilities to the defendant and its patients whom he served, with a high degree of professional competence.
Defense counsel urged that the legislative scheme of regulation contained in N.J.S.A. 45:9-1 et seq. is concerned only with the practice of medicine by individuals, lest the public be victimized by unlicensed persons unskilled in the art of healing, and that it was never the intention of this legislation to regulate hospitals, or indeed those who practice the healing arts as supervised employees of approved hospitals. A construction of the statute as binding upon hospitals, defendant insists, would work an unreasonable hardship not only upon hospitals, but the general public, particularly in view of an alleged shortage of physicians. While this point of view is not without plausibility and, if properly presented to the Legislature, might possibly be *413 considered to be of sufficient merit to warrant a statutory amendment, this court is not at liberty to indulge in presumptions that the legislature intended something more or less than what it actually wrote into law. A court is obliged to interpret and enforce the legislative will as written, and may not, under the guise of construction, substitute a different meaning, even though it might honestly regard the alternative as more desirable.
When the application of a statute is involved, it is the duty of the court to determine the legislative intention from the plain meaning of the statute and to apply the statutory provision, in the light of that intention, to the fact. Legislative intention with respect to particular parts of a statute can be understood only when the passage or section is considered in its proper context. To reach an understanding of the legislative intent, it is essential to ascertain the purpose for which the entire statute was enacted, and the mischief it was designed to eliminate. The legislative plan or scheme, gathered from the statutory enactment when read in the full light of its history, purpose and context, should be effected. Albert F. Ruehl Co. v. Board of Trustees of Schools for Industrial Education, 85 N.J. Super. 4 (Law Div. 1964); State v. Gill, 47 N.J. 441 (1966); Seatrain Lines v. Medina, 39 N.J. 222 (1963). Moreover, the court must consider and give effect to all of the provisions of a statute. An inference of surplusage in a legislative enactment should not be readily entertained, and no statutory language should, if reasonably available, be found to be inoperative, superfluous or meaningless. Foy v. Dayko, 82 N.J. Super. 8 (App. Div. 1964); Board of Education of the City of Hackensack v. City of Hackensack, 63 N.J. Super. 560 (App. Div. 1960). A court certainly may not read out express provisions which continue to make sense on sheer speculation that the Legislative meant to delete it or by some strained enlargement of an exception. Delaware River Port Authority v. Hughes, 46 N.J. 451 (1966) The nature of the subject matter, contextual setting, and *414 statutes in pari materia must all be viewed together in seeking legislative intent, and the import of particular words and phrases are controlled accordingly. It is to be assumed that each word and phrase in a statute was incorporated by design of the Legislative, and the statute must be construed as a whole, giving effect to each and every portion thereof, in a manner consistent with the general scheme and intent of the whole. Labeda v. Clark, 40 N.J. 424 (1963); Ruehle, supra.
Since N.J.S.A. 45:9-22 is penal in nature, it should be read strictly to avoid construction which would lead to an unjust penalty, but strict construction does not warrant a narrow or limited meaning inconsistent with the obvious intent and purpose of the Legislative. State v. Brown, 67 N.J. Super. 450 (App. Div.) This section, among other things, does indeed contain a general prohibition against the practice of medicine and/or surgery or chiropractic, in this State by any person without such person first having obtained a license, as provided in Article 9, or any supplement thereto, or contrary to any of the provisions of such article or any supplement thereto, and provides that any such person who violates any of the provisions of this Chapter, or any supplement thereto, shall be liable to a penalty of two hundred dollars ($200.00) for the first offense. But there is more. Following the prohibitory language with respect to individuals, the statute clearly goes on to include within the proscription: "any person, company or association who shall employ for a stated salary or otherwise, or aid or assist any person not regularly licensed to practice medicine and/or surgery or chiropractic in this State, to practice medicine and/or surgery or chiropractic therein, or who violates any of the provisions of this chapter or any supplement thereto, shall be liable to a penalty of two hundred dollars ($200.00), for the first offense." The statute provides for the recovery of the penalty by and in the name of the State Board of Medical Examiners, in a summary *415 manner pursuant to the Penalty Enforcement Law (N.J.S. 2A:58-1 et seq.) and the Rules of the Supreme Court.
This section is consistent with the entire plan and purpose of the Legislature in this Article, which is an expression of the Legislature's concern with an important problem of public health and welfare and the creation of a statutory method of dealing with it. Clearly within its police power, the Legislature has attempted to protect the public against the obvious danger of exposure to inexperienced, ignorant, incompetent, deceptive and fraudulent persons, who might hold themselves out as practitioners of the healing arts. It has resorted to the classic device of requiring all persons, before engaging in the practice of medicine and/or surgery or chiropractic in this State, to first obtain a license therefore in this State. It delegated jurisdiction over the licensing and supervision of such persons, to the State Board of Medical Examiners, and provided for the organization, and powers of that Board. The section under consideration in this case is a vital part of the Legislature's scheme to implement the delegated powers and duties of the Board by providing a method of enforcement. It saw fit, in enacting this section to provide for the enforcement of the provisions of the whole article not only against the individuals who might personally seek to engage in the practice of medicine without having first having obtained a license in this State, but also reached out to prevent other persons, companies and associations from employing for a stated salary or otherwise, or aiding or assisting any persons not regularly licensed, to practice medicine and/or surgery or chiropractic in this State, and from otherwise violating any of the provisions of Article 9. It subjected such persons, companies and associations to the same penalties for violation as were provided for unlicensed practitioners in violation. This court concludes from a reading of the entire Article that the Legislature clearly intended to include as a "person, company or association" hospitals incorporated under the provisions of the Act to Incorporate Associations *416 not for Pecuniary Benefit, and the Acts supplemental thereto and Amendatory thereof, recited in the defendant's Charter, and now codified as N.J.S.A. 15:1-1 et seq. Indeed, without in any way intending to limit the legislative intent or the operative scope of the statute, it would seem that hospitals were among the very persons, companies or associations which the Legislature probably had foremost in its mind. This conclusion is consistent with the inclusion among the exceptions from the operation of N.J.S.A. 45:9-22, subsection (d) of N.J.S.A. 45:9-21, which permits, under certain limitations and conditions, unlicensed persons to serve as members of the resident medical staffs of legally incorporated charitable or municipal hospitals or asylums approved by the Board; and subsection (n) of the same section which permits unlicensed persons holding the degrees of M.D. or D.O., under certain circumstances and conditions, to be employed as members of the medical staff of a State or County institution, or as members of the teaching or scientific staff of a State agency.
We turn next to defendant's contention that it is not in violation of N.J.S.A. 45:9-22 because it alleges Dr. Peters did not "open an office or place for the practice of his profession in this State," and therefore comes within the exception set forth in N.J.S.A. 45:9-21(c). The court is satisfied that Dr. Peters did not in the conventional sense of the terms open an office or place for the practice of his profession in this State. While it may be that had Dr. Peters, a duly licensed physician in Pennsylvania, merely visited and treated his own patients at Warren Hospital, the provisions of N.J.S.A. 45:9-21(c) might be applicable to him, Dr. Peters did not do that. He had no patients of his own. He was employed by the defendant, for a stated salary, as a member of its staff to diagnose and treat its patients in its out patient department or emergency room. He was a full time employee obliged to be on duty at the hospital five and one half days per week and was also subject to emergency call.
*417 N.J.S.A. 45:9-22 is a general prohibition against the practice of medicine and/or surgery or chiropractic in this State by persons not licensed therefor by this State, and it is also general in its prohibition of persons, companies and associations who employ such unlicensed persons for stated salary or otherwise to practice medicine and/or surgery or chiropractic in this State. The statute is clear, unequivocal, and general in its application. Any exceptions in its operation are spelled out in N.J.S.A. 45:9-21. As a general rule of construction, enumerated exceptions in a statute indicate legislative intent that the statute shall be applied to all cases not specifically excepted. State v. Reed, 34 N.J. 554, 91 A.L.R.2d 797 (1961); State v. MacDonald, 92 N.J. Super. 448 (App. Div. 1966). While in construing a statute, a court must endeavor to give it the interpretation which best serves the entire legislative plan represented thereby, and where a statute is penal in nature, the construction adopted must emanate from the clearly expressed legislative purpose to that effect, New Jersey State Board of Optometrists v. Koenigsberg, 33 N.J. Super. 387 (App. Div 1954); the court may not write in additional qualifications which the Legislature pointedly omitted in drafting its own enactment. Marrarca v. Harbo, 76 N.J. Super. 429, Modified 41 N.J. 569.
It is noteworthy to observe that N.J.S.A. 45:9-21(d) as presently enacted, superseded subsection (e) of the former statute which exempted from the prohibition "a person while actually serving as a member of the resident medical staff of any legally incorporated charitable or municipal hospital or asylum." The present subsection (d) carries those very words over but adds a qualification. Subsection (c) to which the defendant points for exemption, is limited to "physician[s] or surgeon[s] of another State of the United States and duly [licensed] to practice medicine or surgery therein." Subsection (d) of the old statute, which the present Subsection (c) superseded, permitted physicians of foreign countries as well. Further indications of a legislative *418 trend toward a limitation of the exceptions in N.J.S.A. 45:9-21, are evident by a comparison of the current subsections (a), (b), and (k), with subsections (a), (c) and (n) respectively of the old statute. Each change has brought with it further limitation upon the exception. It would seem, therefore, that contrary to defendant's contention that the Legislature is not concerned with physicians who are practicing in approved hospitals, that the Legislature appears to be increasingly vigilant in its concern for the public health and welfare. The manifest purpose of this law is clear. The general prohibition is clear. It is a settled rule of construction that exceptions to legislative measures are generally to be strictly but reasonably construed, consistent with the manifest reason and purpose of the law. Palkoski v. Garcia, 19 N.J. 175. This court holds that the exception contained in N.J.S.A. 45:9-21(c) is not applicable to the facts in this case; that the defendant is in violation of N.J.S.A. 45:9-22; and is therefore, subject to the mandatory penalty therein provided. Accordingly, judgment is given to plaintiff in the sum of $200.00.