147 N.J. Super. 592 (1977)
371 A.2d 794
GARDEN STATE COMMUNITY HOSPITAL, APPELLANT,
v.
STATE BOARD OF MEDICAL EXAMINERS, RESPONDENT. ELMER COMMUNITY HOSPITAL, APPELLANT,
v.
STATE BOARD OF MEDICAL EXAMINERS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1977.
Decided March 14, 1977.
Before Judges LYNCH, MILMED and ANTELL.
Mr. Joseph H. Kenney argued the cause for appellants Garden State Community Hospital and Elmer Community *593 Hospital (Messrs. Archer, Greiner & Read, attorneys; Mr. Charles Lee Harp, Jr. on the brief).
Mr. Anthony F. LaBue, Deputy Attorney General, argued the cause for respondent New Jersey State Board of Medical Examiners (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General and Ms. Erminie Conley, Deputy Attorney General, of counsel; Mr. LaBue and Mr. Steven I. Kern, Deputy Attorneys General, on the brief).
PER CURIAM.
These consolidated appeals and two others[1] were initially from October 6, 1975 decisions of the State Board of Medical Examiners that each of the hospitals involved "must cease and desist forthwith from performing major operations without a qualified physician licensed to practice medicine and surgery in the State of New Jersey, assisting in these operations."
The Board's decision had been reached following appearances before it by physicians and representatives of nine hospitals[2] to discuss and explain State Health Department inspection reports that major surgical procedures were being performed in ten hospitals[3] in the State with no first assistant surgeon in attendance or with a registered nurse, licensed practical nurse, O.R. technician, medical student, or unlicensed foreign medical school graduate acting as first assistant surgeon. On January 8, 1976 a proposed Board rule concerning certain requirements during major surgery was published in the New Jersey Register. Appellants applied to this court for an injunction to enjoin Board *594 promulgation of the proposed rule. That motion was denied. In response to numerous objections the Board withdrew the proposed rule and proposed instead a substantially revised rule on the subject. The revised rule was approved by the Medical Society of New Jersey and the New Jersey Hospital Association, and thereafter, on August 19, 1976, it was adopted by the Board and is now N.J.A.C. 13:35-7.1. Appellants then moved before us for an order permitting review of the Board's new rule and directing the Board to supplement the record on appeal to include the documents received by the Board in response to its published notices of proposed rule-making. We granted the motion.
At oral argument on these appeals counsel stipulated that the October 6, 1975 "cease and desist" decision of the State Board of Medical Examiners is no longer in effect, having been superseded by the now governing rule, N.J.A.C. 13: 35-7.1. In the circumstances it appears that the October 6, 1975 administrative action of the Board no longer has any impact upon the hospitals involved and that there is no justiciable controversy between the hospitals and the Board in regard to that action. The appeals from the October 6, 1975 decision of the Board have thus become moot and are, accordingly, dismissed. We now proceed to a determination of the validity of the new rule, as embodied in N.J.A.C. 13:35-7.1.
Appellants now contend that (a) "[t]he Board has no statutory power to promulgate the rule in question"; (b) "[t]he rule is void for vagueness"; (c) "[t]he rule is invalid because it is inconsistent with the provisions of the Medical Practice Act", and (d) "[t]he rule is void as patently arbitrary, capricious and unreasonable, substantively and procedurally." We find no merit in any of these contentions.
N.J.A.C. 13:35-7.1 reads as follows:

Major Surgery
(a) Major surgical procedures are those with a hazard to the life, health, or welfare of a patient.
*595 (b) In accordance with the provisions of the Medical Practice Act, N.J.S.A. 45:9-1 et seq., any major surgical procedure shall only be performed by a duly qualified surgeon with a duly qualified assisting physician, or a duly qualified surgical resident in a training program approved by the Educational Council of the American Medical Association or the American Osteopathic Association, except in matters of dire emergency. It shall be the responsibility of each medical staff to promulgate appropriate rules and regulations in this regard and the medical staff and hospital board of trustees shall assure compliance by the individual physicians.
(c) A duly qualified surgeon, duly qualified assistant physician, and duly qualified resident shall be determined by the hospital credentials committee in conjunction with the chairman or chief of the appropriate department or division consistent with the requirements of the Medical Practice Act, N.J.S.A. 45:9-1 et seq. It shall be the responsibility of each medical staff to promulgate appropriate rules and regulations in this regard and the medical staff and hospital board of trustees shall assure compliance by the individual physicians.
(d) Failure to comply with this rule may subject the physician to suspension or revocation of his license to practice medicine and surgery in this state, pursuant to N.J.S.A. 45:9-16(g), and/or may subject any other person, association [sic], corporation, or institution to the sanctions and remedies set forth in N.J.S.A. 45:9-22, N.J.S.A. 45:9-26, and N.J.S.A. 45:9-27.1.
Appellants contend that the State Board of Medical Examiners "is limited to licensing practitioners of medicine, disciplining licensed practitioners through revocation and suspension proceedings, and prosecuting others for statutory violations."[4] We discern no such limitation in the Medical Practice Act. The Board was established by an act entitled "An act to regulate the practice of medicine and surgery, to license physicians and surgeons, and to punish persons violating the provisions thereof," L. 1894, c. 306, now N.J.S.A. 45:9-1, et seq. "[T]he state has the right to regulate the *596 practice of medicine," Black v. MacMahon, 130 N.J.L. 323, 324-325 (Sup. Ct. 1943), aff'd o.b. 132 N.J.L. 171 (E. & A. 1944), and exercises that right through its administrative agency, the State Board of Medical Examiners. Thus,
[The Board] * * * shall make and adopt all necessary rules, regulations and bylaws not inconsistent with the laws of the State or of the United States, whereby to perform the duties and to transact the business required under the provisions of this article (section 45:9-1 et seq.). [N.J.S.A. 45:9-2]
The board may refuse to grant or may suspend or revoke a license * * * to practice medicine and surgery * * * upon proof to the satisfaction of the board that the holder of such license * * * (g) has been guilty of employing unlicensed persons to perform work which, under this chapter (45:9-1 et seq.) can legally be done only by persons licensed to practice medicine and surgery * * * in this State, or (h) has been guilty of gross malpractice or gross neglect in the practice of medicine which has endangered the health or life of any person, or (i) has been demonstrated professionally incompetent to practice medicine * * *. [N.J.S.A. 45:9-16]
Any person shall be regarded as practicing medicine and surgery, within the meaning of this chapter, * * * who shall either offer or undertake by any means or methods to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition. [N.J.S.A. 45:9-18]
* * * any person, company or association who shall employ for a stated salary or otherwise, or aid or assist any person not regularly licensed to practice medicine and/or surgery * * * in this State, to practice medicine and/or surgery * * * therein, or who violates any of the provisions of this chapter or any supplement thereto, shall be liable to a penalty * * *. [N.J.S.A. 45:9-22]
While N.J.S.A. 45:9-2 confers upon the board rule-making powers in general terms, "all powers and duties incidental and necessary to make such legislation effective are included by implication." 2A Sutherland, Statutory Construction (4 ed., Sands, 1973), § 55.04 at 384. See particularly, In matter of suspension and revocation of permit of Carfred, Inc., t/a Helter Pharmacy, etc., 73 N.J. ___ (1977), wherein Chief Justice Hughes, after referring to holdings in a number of cases in other jurisdictions, including Kansas State Bd. of Healing Arts v. Foote, 200 Kan. 447, 436 P.2d 828 (Sup. Ct. 1968), and State ex rel. Lentine *597 v. State Bd. of Health, 334 Mo. 220, 65 S.W.2d 943 (Sup. Ct. 1933), as well as holdings in several New Jersey cases, stated:
Where, as here, the task of the regulatory agency is "to protect the health and welfare of members of the public" by assuring that all licensed practitioners are qualified, competent and honest, the grant of implied powers is particularly important. [___ N.J. at ___]
In Kansas State Bd. of Healing Arts v. Foote, supra, the Supreme Court of Kansas pointed out:
The whole purpose and tenor of the healing arts act is the protection of the public against unprofessional, improper, unauthorized and unqualified practice of the healing arts. The goal is to secure to the people the services of competent, trustworthy practitioners. The act seeks to do this through licensure. * * *

* * * * * * * *
* * * Considering the entire policy expressed in the act, we believe the legislature, by enumerating certain acts and classifying them as unprofessional conduct, did not thereby intend to exclude all other acts or conduct in the practice of the healing arts which by common understanding render the holder of a license unfit to practice. It would indeed be difficult, not to say impractical, in carrying out the purpose of the act, for the legislature to list each and every specific act or course of conduct which might constitute such unprofessional conduct of a disqualifying nature. [436 P.2d at 833]
Similarly, in Lentine, supra, the Supreme Court of Missouri noted that by particularizing certain acts the Legislature did not intend
* * * to thereby exclude all other acts or conduct affecting the practice of medicine and the moral conduct of the physician, in that connection, which by common opinion and fair judgment are found to be in their very nature unprofessional and dishonorable, as grounds or cause for revocation of a license. Rather upon a showing of any of the things enumerated the board of health, and the court upon review, is not called upon in its sound discretion to determine whether such conduct is such as in common judgment is deemed unprofessional and dishonorable, for the statute has expressly declared it so to be. It would not be practicable to the carrying out of the wholesome purpose of the statute to undertake to catalogue, list, or specify *598 each and every act or course of conduct which would, or under what circumstances, constitute bad moral character or unprofessional and dishonorable conduct, and we do not think the Legislature intended to do so. [65 S.W.2d at 950]
In the circumstances we agree basically with the assessment made by the Attorney General in his supplemental brief submitted on behalf of the respondents on the appeals that:
The regulation contemplates the situation in which the unlicensed assistant will be called upon to actually physically assist with the surgical procedure and in an emergency, to take the place of the surgeon in charge, should complications, or personal disability occur. The proposed regulation is consistent with the Board's basic duty and exclusive authority to ensure that patients at all times, and in every possible situation be under the care of a qualified licensed physician who is subject to all of the other licensing criteria and disciplinary provisions of the Medical Practice Act and the rules of the Board.
Nothing in the regulation impinges upon the surgeon's exercise of his judgment or application of his skills in performing an operation. Rather, it is designed to insure the availability of competent surgical judgment and skills to the patient throughout the surgical procedure.
We are, accordingly, satisfied that the rule in question falls entirely within the ambit of the statutory powers and duties, express and implied, of the State Board of Medical Examiners to regulate the practice of medicine and surgery and secure to the people the services of competent, qualified practitioners of these healing arts. See State Bd. of Medical Examiners v. Warren Hospital, 102 N.J. Super. 407, 415 (Cty. D. Ct. 1968), aff'd 104 N.J. Super. 409 (App. Div. 1969), certif. den. 54 N.J. 100 (1969). In the circumstances the reasonableness of the rule is apparent.
We find no substance in appellants' claim that the rule, N.J.A.C. 13:35-7.1, is inconsistent with that part of the Medical Practice Act which provides that:
*599 The prohibitory provisions of this chapter shall not apply to the following:

* * *
k. A podiatrist, professional nurse, or a registered physical therapist, masseur, while operating in each particular case under the specific direction of a regularly licensed physician or surgeon. * * * [N.J.S.A. 45:9-21(k)].
Clearly, the quoted provision does not authorize or sanction any of the designated persons to act as a first assistant surgeon in the performance of major surgery. Rather, it implicitly requires that such persons, in order to claim in a given instance exemption from the prohibitions of the Medical Practice Act, act only within the sphere of their particular professional competence and then only "under the specific direction of a regularly licensed physician or surgeon."
Additionally, it is obvious that N.J.S.A. 45:9-21(k) is inapplicable here for another reason. By its terms it relates solely to persons functioning "under the specific direction of a regularly licensed physician or surgeon." We note that one of the purposes of N.J.A.C. 13:35-7.1 is to insure that a qualified physician is immediately available should the primary surgeon become suddenly incapacitated. In that eventuality one could hardly expect any "specific direction" from the primary surgeon. It would be expected that the assistant complete the operation on his or her own.
Finally, we conclude that the rule is not impermissibly vague. What was said in regard to a municipal ordinance in Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), is equally applicable here, viz:
Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by "flexibility and reasonable breadth, rather than meticulous specificity," Esteban v. Central Missouri State College, 415 F.2d 1077, 1088 (CA8 1969) (Blackmun, J.), cert. denied, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970), but we think it is clear what the ordinance as a whole prohibits. [408 U.S. at 110, 92 S.Ct. at 2300, 33 L.Ed.2d at 228-229] *600 Designed to protect the public health, safety and welfare, the rule under review forbids performance of "any major surgical procedure" except by "a duly qualified surgeon with a duly qualified assisting physician, or a duly qualified surgical resident in a training program approved by the Educational Council of the American Medical Association or the American Osteopathic Association, except in matters of dire emergency."
The term "qualified" obviously means fit to perform the particular operation involved. The phrase "major surgical procedure" is defined in the rule as one "with a hazard to the life, health or welfare of a patient." A major operative procedure is one "involving grave risk," Webster's Third New International Dictionary (unabridged, 1971) at 1363. See also, Stedman's Medical Dictionary (Unabridged Lawyers' Edition 1961), at 1449, defining major surgery as "operative s[urgery] in which the operation itself is hazardous." These terms are undoubtedly generally understood by physicians, surgeons and hospitals throughout the State. And the term "appropriate" as used in paragraph (c) of the rule to designate the kind of "rules and regulations" to be promulgated by "each medical staff," is to be given its ordinary meaning, i.e., "specially suitable," Webster's Third New International Dictionary at 106. Those affected by the rule are, from the language used, given fair notice of the prohibited conduct. The charge that it is "void for vagueness" has not been sustained. See Parker v. Levy, 417 U.S. 733, 755-756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439, 457 (1974).
The State Board of Medical Examiners properly exercised its rule-making authority in promulgating its rule on "Major Surgery." We find no legal infirmity in that rule. N.J.A.C. 13:35-7.1 is valid.
Accordingly, the appeals herein are dismissed.
NOTES
[1] The other two appeals are those by Rancocas Valley Hospital (A-686-75) and Underwood-Memorial Hospital (A-864-75). Each of these is disposed of in accordance with our opinion herein.
[2] The four hospitals involved in the appeals and five others.
[3] The nine referred to above and one other.
[4] Appellants add that "The Legislature empowered the Board to determine who is qualified to practice medicine. But, except for specific statutory categories (none of which pertain here) the Legislature did not see fit to dictate through the Medical Practice Act how medicine should be practiced by licensed physicians."