177 N.J. Super. 523 (1981)
427 A.2d 104
MARVIN BRODIE, M.D., MARK MISHKIN, M.D., RADIOLOGICAL SOCIETY OF NEW JERSEY AND MEDICAL SOCIETY OF NEW JERSEY, APPELLANTS,
v.
STATE BOARD OF MEDICAL EXAMINERS OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1980.
Decided February 27, 1981.
*525 Before Judges BISCHOFF, MILMED and FRANCIS.
Burton L. Eichler argued the cause for appellants (Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer, attorneys; Burton L. Eichler, H. Neil Broder and Barry H. Ostrowsky of counsel and on the briefs).
Bruce H. Snyder, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel).
The opinion of the court was delivered by MILMED, J.A.D.
*526 This appeal brings up for review the validity of a rule promulgated by the State Board of Medical Examiners (Board) which requires physicians who are licensed to practice medicine and surgery and who provide diagnostic radiological services for other physicians so licensed, to provide to licensed chiropractors, upon their request, diagnostic radiological services "without discrimination on the basis of classification of license," provided the services requested pertain to skeletal areas of the body. Denial of such professional diagnostic radiological services constitutes "purposeful and intentional discrimination and may subject the [radiologist] to appropriate disciplinary action by the Board of Medical Examiners." Appellants' applications, both to this court and to our Supreme Court, to stay the effectiveness of the rule pending appeal, were denied.
Appellants contend that the rule, which became effective August 5, 1980 and is now N.J.A.C. 13:35-6.18, (a) "interferes impermissibly with the constitutional right of practitioners of medicine and surgery to contract freely for their professional services"; (b) "interferes unduly with the right of radiologists to exercise their independent professional judgment"; (c) "abridges the right of privacy enjoyed by radiologists"; (d) "is invalid since [the Board of Medical Examiners] adopted it pursuant to an unconstitutionally excessive delegation of power," and (e) was promulgated by the Board acting "beyond its enabling authority." They also contend that the adoption of the rule was "in the nature of a contested case" and thus required, prior to promulgation, "a full and proper hearing." And, they further claim the support of "scientific studies" for "the belief of radiologists that accepting referrals from chiropractors is detrimental to the public health." We find no merit in any of these contentions.
The situation which ultimately led to the adoption of the rule is clearly described in a March 28, 1980 letter from Dr. Edwin H. Albano, President of the State Board of Medical Examiners, to *527 counsel for appellants. The letter was written after one of the appellants, Dr. Marvin Brodie, a radiologist, had testified at a Board hearing regarding its inquiry into certain practices of Monmouth Radiologists, a professional association of medical and osteopathic physicians, and two of its members, Dr. Brodie and Dr. Irving H. Stein. Dr. Albano wrote:
The New Jersey State Board of Medical Examiners has made informal inquiry of the practice of Monmouth Radiologists, Dr. Brodie and Dr. Stein respecting allegations by individual patients and by the Division of Medical Assistance and Health Services, as well as by individual chiropractic physicians of the State of New Jersey, that the physicians have arbitrarily refused requests for radiological diagnostic services for patients when those patients are referred by a chiropractic physician. The refusals of referrals were alleged to be arbitrary and based entirely upon the referring physicians status as chiropractors.
In this appearance before the Board on March 12, 1980, Dr. Brodie has asserted that he does accept Medicaid patients who are referred by doctors of medicine or doctors of osteopathy but that he would refuse a referral from a chiropractor because he does not believe that chiropractors, as a class, to be sufficiently knowledgeable to understand the reports he will prepare or to be competent to render subsequent treatment to the patients, or to be responsible enough to refer matters outside of a chiropractor's scope of practice to another physician or specialist in the appropriate area. Dr. Brodie has advised that this is the general policy of Monmouth Radiologists and that the secretaries and receptionists are instructed accordingly to refuse any direct or indirect referrals from chiropractors for these reasons.
Dr. Brodie has also advised that Monmouth Radiologists accepts requests from plenary licensed physicians for specified diagnostic procedures and also accepts referrals where the radiologists themselves will determine the appropriate procedures. Dr. Bodie asserted further that where, in his own judgment, the pathology uncovered may not be appropriately treated by the referring physician, he will indicate to the referrer the problem areas involved and will rely upon the proper professional and responsible judgment of the referring physician to in turn refer the patient to a specialist. He further advises that he bills his patients directly for the services rendered by the radiological group.
The Board has considered the allegations informally presented and the explanation of Monmouth Radiologists and of their attorney, and concludes as follows:
Chiropractors (as well as podiatrists) are licensed health care professionals in the State of New Jersey, whose professional services are under the specific jurisdiction of the New Jersey State Board of Medical Examiners. The Board is responsible for monitoring the activities of both plenary and limited licensees and insuring that the latter provide services only within their licensed scope of practice. It further appears that Monmouth Radiologists, Dr. Brodie and Dr. *528 Stein hold themselves out to the public as radiology specialists who are available to perform diagnostic radiological procedures on both direct and indirect referral. They function not as technicians but as independent practitioners exercising their own professional judgment as to the appropriate and required procedures for each given patient. The Board is in full agreement with Monmouth Radiologists in relying, as a general rule, upon the professional responsibility exercised by all licensees in recognizing when a particular patient's problem is not within their individual competence or their category of licensed scope of practice and will make the appropriate referral at that time. However, it appears that Monmouth Radiologists, Dr. Brodie and Dr. Stein, do not accord this respect to chiropractors licensed by this Board or, for that matter, podiatrists. Nevertheless, it is clear that a responsible chiropractor may need expert radiology services to determine whether chiropractic adjustment is appropriate and/or safe for a given patient and it is an exercise of responsible judgment for that chiropractor or for a podiatrist to request such expert radiological procedures before proceeding with independent patient management. Where Monmouth Radiologists, Dr. Brodie and Dr. Stein have made their services available to all other competent physicians but have selectively discriminated against chiropractors and podiatrists as an entire class of limited licensees, such conduct is found by the Board not to be in the best interest of the people of this State. It may be found to constitute professional misconduct pursuant to N.J.S.A. 45:1-21(e). It is therefore ordered that hereafter, where Dr. Brodie and Dr. Stein jointly or separately provide diagnostic radiological services for other physicians possessing a plenary license to practice medicine and surgery, they shall, upon the request of a chiropractic physician, provide diagnostic radiological services to skeletal areas of the body to chiropractic physicians or podiatric physicians without discrimination on the basis of classification of license.
Thereafter, Monmouth Radiologists and Drs. Brodie and Stein commenced suit in the Chancery Division seeking, among other things, injunctive relief and a declaration that their "policy and practice .... in declining acceptance of referrals from practitioners of chiropractic is a valid, responsible and proper exercise of professional judgment and within the scope of their respective licenses and charter, as the case may be, to practice medicine and surgery." The suit was dismissed upon the Board's determination to withdraw any threatened disciplinary action and proceed instead by rule on the subject.
The rule as proposed was published in the New Jersey Register, 12 N.J.R. 347, on June 5, 1980. Interested persons were invited to submit written comments thereon by June 30. Following *529 receipt of such comments the Board determined that no public hearing on the rule was warranted and adopted the rule as proposed, effective August 5, 1980.
Appellants' attack on the Board's authority to adopt the rule and on the method of its promulgation flies in the face of the applicable statutes and decisional law. The State exercises its right to regulate the practice of medicine and surgery, and the practice of chiropractic, through its administrative agency, the State Board of Medical Examiners. N.J.S.A. 45:9-2; N.J.S.A. 45:9-16. And see Garden State Community Hosp. v. State Bd. of Medical Examiners, 147 N.J. Super. 592, 595-596 (App.Div. 1977), certif. den. 74 N.J. 283 (1977); Black v. MacMahon, 130 N.J.L. 323, 324-325 (Sup.Ct. 1943), aff'd o.b. 132 N.J.L. 171 (E. & A. 1944). In this regard the Legislature has mandated that the Board
... shall make and adopt all necessary rules, regulations and bylaws not inconsistent with the laws of the State or of the United States, whereby to perform the duties and to transact the business required under the provisions of this article (section 45:9-1 et seq.). [N.J.S.A. 45:9-2]
While these rule-making powers are in general terms, "all powers and duties incidental and necessary to make such legislation effective are included by implication." 2A Sutherland, Statutory Construction (4 ed. Sands 1973), § 55.04 at 384. Garden State Community Hosp. v. State Bd. of Medical Examiners, supra, 147 N.J. Super. at 596. And see In re Suspension of Heller, 73 N.J. 292, 303-304 (1977).
Unquestionably, the Board has broad authority to adopt rules designed to protect the health, safety and welfare of patients of its licensees. Cf. In re Suspension of Heller, supra; Kansas State Bd. of Healing Arts v. Foote, 200 Kan. 447, 436 P.2d 828, 833 (Sup.Ct. 1968); State ex rel. Lentine v. State Bd. of Health, 334 Mo. 220, 65 S.W.2d 943, 950 (Sup.Ct. 1933); State Bd. of Medical Examiners v. Warren Hospital, 102 N.J. Super. 407, 415 (Cty.D.Ct. 1968), aff'd 104 N.J. Super. 409 (App.Div. 1969), *530 certif. den. 54 N.J. 100 (1969). Here, the obvious design of the challenged rule is the protection of the health, safety and welfare of patients of licensed chiropractors. It follows reasonably from that part of N.J.S.A. 45:9-14.5 which gives licensed chiropractors "the right in the examination of patients to use the neurocalometer, X-ray, and other necessary instruments solely for the purpose of diagnosis or analysis." Nothing in the rule impinges on the radiologist's exercise of his judgment or application of his special skills in furnishing "professional diagnostic radiological services" as set forth therein. Rather, it is designed to insure the availability of such judgment and skills to patients of licensed chiropractors "without discrimination on the basis of classification of license, provided the diagnostic radiological services requested pertain to skeletal areas of the body."
We are thus satisfied that N.J.A.C. 13:35-6.18 falls entirely within the ambit of the statutory powers and duties, express and implied, of the State Board of Medical Examiners to regulate the practice of medicine and surgery and the practice of chiropractic, and to secure to the patients of the practitioners involved the expert diagnostic radiological services referred to therein. The reasonableness of the rule, a clear basis for which is set forth in Dr. Albano's letter of March 28, 1980 above-quoted, is, accordingly, apparent. Appellants' reference to the Board's alteration of "its 1976 position that it lacked authority to issue such a [rule]" has no relevance. We are here concerned only with the validity of the Board's present policy in the matter as evidenced by the promulgated rule.
Appellants argue that they "were entitled to," but were denied, "a full evidentiary hearing under the Administrative Procedure Act," and that the Board's failure "to provide such a hearing, despite numerous requests to do so, constitutes a violation of our State's established, regulatory procedure." They misconceive the nature, scope and purpose of N.J.S.A. 45:9-2 *531 and § 4 of the Administrative Procedure Act, N.J.S.A. 52:14B-4. The challenged rule was properly adopted by the Board in keeping with the requirements of the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. On June 5, 1980 the Board gave and published the required notice of its intended action, 12 N.J.R. 347, and afforded all interested persons "reasonable opportunity," N.J.S.A. 52:14B-4(a)(2), to "present statements or arguments by letter or other written form relevant to the proposed new rule on or before June 30, 1980...." And, there is nothing in the record before us to overcome the presumption that the Board considered fully all written submissions respecting the proposed rule. We further note that opportunity for oral presentation is not mandated by either N.J.S.A. 52:14B-4 or N.J.S.A. 45:9-2. See Insurance Brokers Ass'n of N.J. v. Sheeran, 162 N.J. Super. 34, 39, n. 1 (App.Div. 1978), certif. den. 78 N.J. 408 (1978). Appellants' suggestion that the proceeding for the adoption of the rule should have been treated as a "contested case" within the meaning of that term as defined in § 2 of the Administrative Procedure Act, N.J.S.A. 52:14B-2(b), is clearly without merit. N.J.A.C. 13:35-6.18 is obviously a "rule," as the term is defined in N.J.S.A. 52:14B-2(e), viz., an "agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency." In the circumstances, a trial-type hearing was neither mandated nor appropriate. See 1 Davis, Administrative Law Treatise, § 7.06 at 429-432 (1958), and Supp. (1970) at 327-330; Insurance Brokers Ass'n of N.J. v. Sheeran, supra.
Appellants' claims that the challenged rule constitutes "illegal interference" by the Board "with the right [of radiologists] to freedom of contract," and abridges their "right of privacy," are equally without merit. In Barsky v. Board of Regents of N.Y., 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829 (1954), Justice Burton, speaking for a majority of the court, observed:

*532 It is elemental that a state has broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there. It is a vital part of a state's police power. The state's discretion in that field extends naturally to the regulation of all professions concerned with health. [347 U.S. at 449, 74 S.Ct. at 654, 98 L.Ed. at 838]
........
The practice of medicine in New York is lawfully prohibited by the State except upon the conditions it imposes. Such practice is a privilege granted by the State under its substantially plenary power to fix the terms of admission. [347 U.S. at 451, 74 S.Ct. at 655, 98 L.Ed. at 839][1]
........
It is ... clear that a state's legitimate concern for maintaining high standards of professional conduct extends beyond initial licensing. Without continuing supervision, initial examinations afford little protection. [347 U.S. at 451, 74 S.Ct. at 655, 98 L.Ed. at 839]
See also, Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), reh. den. 439 U.S. 886, 99 S.Ct. 233, 58 L.Ed.2d 201 (1978).
The action taken by the Board in adopting N.J.A.C. 13:35-6.18 "is entitled to the benefit of the customary rebuttable presumption of validity and regularity afforded to administrative regulations generally." Motyka v. McCorkle, 58 N.J. 165, 181 (1971). Appellants "have the burden of satisfying the court that the regulations are unreasonable." Consolidation Coal Co. v. Kandle, 105 N.J. Super. 104, 118 (App.Div. 1969), aff'd o.b. 54 N.J. 11 (1969). We are entirely satisfied from our review of the record submitted on the appeal that appellants have not sustained that burden. Beyond this, the record discloses ample support for the challenged rule.
We find the rule under review, N.J.A.C. 13:35-6.18, to be valid and reasonable. The Board's action in adopting it is affirmed and the appeal is dismissed.
NOTES
[1] The comment is equally applicable to medical practice in this State. See New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 570-571 (1978).