205 N.J. Super. 492 (1985)
501 A.2d 547
IN THE MATTER OF THE PROMULGATION OF N.J.A.C. 13:35-6.14.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1985.
Decided October 17, 1985.
*493 Before Judges DREIER, BILDER and GRUCCIO.
Timothy J. Hinlicky argued the cause for appellant American Physical Therapy Association New Jersey Chapter (Parker, McCay & Criscuolo, attorneys; Timothy J. Hinlicky, on the brief).
Sharon M. Joyce, Deputy Attorney General, argued the cause for respondent New Jersey State Board of Medical Examiners (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Deputy Attorney General, of counsel, Sharon M. Joyce, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
The American Physical Therapy Association, New Jersey Chapter, has appealed from the promulgation by the New Jersey State Board of Medical Examiners of a regulation entitled "Delegation of Physical Modalities to Unlicensed Physician Aides," N.J.A.C. 13:35-6.14[1], contending that such regulation is *494 *495 ultra vires since the authority to regulate such practices rests solely with the New Jersey Board of Physical Therapists. The regulation was published in the New Jersey Register, April 1, 1985.
The Physical Therapists Licensing Act of 1983, effective January 31, 1984, defined the practice of physical therapy as including:
the evaluation, administration and modification of treatment and instruction, including, but not limited to, the use of physical measures, activities, agents and devices for preventative and therapeutic purposes; neurodevelopmental procedures; the performance and evaluation of tests and measurements; and the provision of consultative, educational and other advisory services for the purpose of preventing or reducing the incidence and severity of physical disability, bodily malfunction and pain consistent with the practice of physical therapy. N.J.S.A. 45:9-37.14a.
Physical therapists licensed under the act provide "physical therapy treatment to an individual upon the direction of a licensed physician, dentist or other health care practitioner authorized to prescribe treatment." N.J.S.A. 45:9-37.13b. Physical therapists in turn are permitted to utilize the services of a physical therapist assistant, also licensed under the Act.
As can be seen from the definition of the practice of physical therapy it overlaps with some aspects of the practice of medicine. This problem was recognized in an earlier phase of this litigation concluded April 19, 1982 by the comprehensive opinion of Judge Cohen in Medical Society of N.J. v. N.J. State Board of Medical Examiners, Docket No. C-672-81 (Ch.Div. 1982), in which Judge Cohen refused to enter a declaratory judgment against the State Board of Medical Examiners and Attorney General preventing the promulgation of regulations which the plaintiffs apprehended would restrict their practice of medicine. They feared a prohibition of the use of simple physical therapy modalities within their offices by unlicensed assistants, a procedure *496 that they claim had been used throughout the state. The action before Judge Cohen was
prompted by ... informal indications by the [Medical Examiners] Board that it was prepared to interpret the Physical Therapy Act, N.J.S.A. 45:9-37.1 et seq., in a way the plaintiffs believed improper. The Board threatened the individual plaintiffs with disciplinary action, N.J.S.A. 45:9-16 because, the Board said, they were permitting unlicensed persons to practice physical therapy under their auspices.
Although the count for injunctive relief was dismissed, the case proceeded on plaintiff's claim for a declaration that physicians could lawfully "employ non-professional medical assistants to apply ice, soaks, hot packs, whirl-pool baths, ultra-sound, electrogalvanic stimulation, ultraviolet light and traction under the direction of a physician," and that "the Physical Therapy Act [was] unconstitutional if it is held to prohibit those activities." Judge Cohen determined that since no disciplinary actions or prosecutions had yet been initiated under the Act, nor had definitive regulations been established defining the interrelationships between the duties of a physical therapist and employees of other health care professionals, the case was not ripe for adjudication. He denied declaratory relief. Judge Cohen stated:
On the record before me, I can only say this: Much physical therapy ought to be administered only by physical therapists. Other things that may be within the statute, literally read, have been and may continue to be entrusted to non-professional office assistants. It is not only the nature of the modality that makes a difference, but also the condition of the patient, his injury, his general condition and the existence of other pathology. On the record here, I cannot say where the practice of physical therapy starts and the activity of non-professionals must stop. I cannot say that the Legislature intended that every modality mentioned by the statute is or is not reserved in every instance to physical therapists or if there was intended a degree of professional judgment. I do know that the one sure way of misinterpreting a statute is to dissect its every word in turn and in disregard of the reason for its existence.
After the enactment of the Physical Therapist Licensing Act of 1983 and study of the conflicts problem, the New Jersey Board of Medical Examiners adopted the regulation here under review. Plaintiff asserts that since Judge Cohen had held that the predecessor Physical Therapy Act was constitutional, the regulation of the actions of medical assistants performing functions *497 which would fit the definitions of physical therapy, was within its jurisdiction, not that of the Board of Medical Examiners. We disagree.
Plaintiff has failed to perceive the essential difference between the services permitted by the challenged regulation and that performed by licensed physical therapists or their assistants. Physical therapists provide treatment "upon the direction of a licensed physician, dentist or other health care practitioner authorized to prescribe treatment." (Emphasis added). The aide described in the regulation before us may utilize limited modalities for similar treatment, but only under the supervision of a physician or other health care provider. The physical therapist practices free of the controls specified in N.J.A.C. 13:35-6.14(d) and exercises independent discretion not permitted to the physician's aide.
The Board of Medical Examiners in its Summary of Public Comments and Agency Responses specifically determined that
The tasks that have been identified in this regulation are not deemed by the Board to be the practice of medicine, chiropractic or podiatry and thus the exemption from the prohibitions of the Medical Practice Act need not be sought, and the limitations on those exemptions are not applicable. (17 N.J.R. 837, April 1, 1985).
This statement, read in the context of the specific services being performed within the medical office and under the practitioners supervision is an exercise of the Board's professional interpretation of matters placed within its jurisdiction. In all, the Board's comments indicated that the intention was to provide "services in an efficient and convenient manner" so that patients need not be charged by a physician for services that properly could be delegated to an assistant, nor must a physician hire or refer patients to a licensed therapist when such therapist's discretion is neither needed nor sought.
We determine that the regulation clearly governs an aspect of the practice of medicine, i.e., the delegation of the use of simple modalities of physical therapy as part of medical treatment within the physician's office, similar to, but yet different *498 from the unsupervised application of physical therapy by a licensed physical therapist exercising professional judgment. Jurisdictionally, therefore, we find no infirmity to the Board of Medical Examiner's regulation of this aspect of the practice of medicine or the related fields noted in the regulation.
Although the functions performed by the aids might be considered as constituting the practice of medicine, falling within the broad definition of "any method of treatment of human ailment, disease, pain, injury, deformity mental or physical condition" (N.J.S.A. 45:9-5.1), the Board of Medical Examiners is given the power in N.J.S.A. 45:9-2 to adopt reasonable regulations. The Board specifically may adopt rules to protect the health, safety and welfare of its licensees' patients and provide standards for the practice of medicine in New Jersey. Brodie v. New Jersey Board of Medical Examiners, 177 N.J. Super. 523 (App.Div. 1981); Lemmon Co. v. State Board of Medical Examiners, 175 N.J. Super. 40 (App.Div. 1980); Garden State Community Hospital v. State Board of Medical Examiners, 147 N.J. Super. 592 (App.Div. 1977).
As Judge Cohen noted in the earlier litigation, a line had to be drawn between services which nonprofessionals could perform and those which must be limited to licensed health care providers. The Board has drawn such a line. Certainly a physician could instruct an employee, the patient or even a member of a patient's family to apply cold packs to a sore arm, even though strictly speaking such "treatment" would fall within the definition of the practice of medicine in that it was for the purpose of alleviating pain, injury or a physical condition. A determination of the extent delegation is permissible required the exercise of professional expertise by the Board of Medical Examiners, and the regulation should be accorded a presumption of validity, as is any administrative regulations apparently within the ambit of delegated authority of an agency. Plaintiff has not overcome the heavy burden placed upon a party alleging invalidity. N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561 (1978).
*499 The matter before us has been limited to the exercise of jurisdiction by the Board of Medical Examiners and, as we were informed at oral argument, is not to be considered a challenge to the decision delineating the particular modalities in N.J.A.C. 13:35-6.14(c). We, therefore, neither approve nor disapprove such enumeration of services. We note this limited basis of the challenge, since much of the argument related to the modalities themselves rather than to the issue of jurisdiction. Also left unchallenged was the extent of supervision described in N.J.A.C. 13:35-6.14(d), and we have assumed for the purpose of this opinion that this supervision placed the aides under the effective control of the licensed health care professional.
The action of the New Jersey Board of Medical Examiners in adopting N.J.A.C. 13:35-6.14 is affirmed.
NOTES
[1] The regulation reads:

N.J.A.C. 13:35-6.14 Delegation of physical modalities to unlicensed physician aides
(a) "Physician" or "doctor," for the purpose of this section, shall mean a doctor of medicine (M.D.), a doctor of osteopathic medicine (D.O.), a doctor of podiatric medicine (D.P.M.), and a doctor of chiropractic (D.C.).
(b) A physician may direct his or her unlicensed employee to administer to the doctor's patients certain physical modalities in the limited circumstances set forth in this section, without being in violation of the pertinent professional practice act implemented by the Board, to the extent such conduct is permissible under any other pertinent law or rule administered by the Board or any other State agency.
(c) Physical modalities, for the purpose of this section, shall be limited to heat, diathermy, cold, ultrasound, ultraviolet rays, cold quartz rays and electro-magnetic rays. The aide shall not be permitted to do any rehabilitative exercise programs. No other modalities including T.E.N.S. or traction shall be performed by the unlicensed physician's aide.
(d) A physician may direct the administration of the physical modality by the unlicensed assistant only where the following conditions are satisfied:
1. The doctor shall examine the patient to ascertain the nature of the trauma or disease; to determine whether the application of a physical modality will encourage the alleviation of pain and promotion of healing; to assess the risks of the modality for a given patient and the diagnosed injury or disease and to decide that the anticipated benefits are likely to outweigh those risks.
2. The doctor shall determine all components of the precise treatment to be given at the present therapy session, including type of modality to be used, extent of area to which it shall be applied, dosage or wattage, etc., length of treatment, and any other factors peculiar to the risks of that modality such as strict avoidance of certain parts of the body or of static placement of the applicator. This information shall be written on the patient's chart and made available at all times to the assistant carrying out the instructions.
3. The doctor shall ascertain a satisfactory level of education, competence and comprehension of the particular assistant to whom instruction has been given by the doctor as to modalities used in that office. The doctor shall prepare and maintain a written document certifying as to the instructions given to each assistant, and both doctor and assistant shall sign it.
4. The doctor shall see the patient prior to any subsequent scheduled application of the modality to ascertain that continued treatment is appropriate and that no contraindications to treatment have become apparent.
5. The doctor shall remain on the premises at all times that treatment orders are being carried out by the assistant and shall be within reasonable proximity to the treatment room and available in the event of emergency.
(e) A physician shall have due regard for the specialized training and experience of registered physical therapists, and of physiatrists and orthopedists. Injuries or diseases requiring prolonged treatment, if not administered personally by the doctor, shall normally be referred to a licensed physical therapist, to a physiatrist, orthopedist or other appropriate health care provider.
(f) A bill rendered for the limited consultation set forth in (d)4 above shall not exceed a sum which reasonably reflects the actual level of service, supervision and responsibility personally rendered by the doctor, and consistent with the factors listed in the rule prohibiting excessive fees, N.J.A.C. 13:35-6.11(b) and (c).
(g) On a health insurance claim form pertaining to such service and requiring certification by the doctor, the doctor shall specify the modality applied and shall not generically identify physical therapy.