LEMMON COMPANY, PLAINTIFF-APPELLANT, v. THE NEW
JERSEY STATE BOARD OF MEDICAL EXAMINERS,
DEFENDANT-RESPONDENT.

BOEHRINGER INGLEHEIM LTD., PLAINTIFF-APPELLANT, v.
NEW JERSEY STATE BOARD OF MEDICAL EXAMINERS ET
AL., DEFENDANTS-RESPONDENTS.

AMERICAN SOCIETY OF BARIATRIC PHYSICIANS AND OBESI-
TY AND NUTRITION COUNCIL, PLAINTIFFS-APPELLANTS,
v. STATE BOARD OF MEDICAL EXAMINERS, DEFENDANTS-
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 2, 1980—Decided June 26, 1980.

Before Judges ALLCORN, MORGAN and FRANCIS.

*Arnold M. Mellk* argued the cause for appellant Lemmon Company (*Greenberg & Mellk*, attorneys; *Arnold M. Mellk* of counsel; *Dennis Daly*, on the brief).

*Murray J. Laulicht* argued the cause for appellant Boehringer Ingleheim Ltd. (*Pitney, Hardin & Kipp*, attorneys; *Clyde A. Szuch* and *Ronnie F. Liebowitz*, on the brief).

*Charles H. Hoens, Jr.*, argued the cause for appellants American Society of Bariatric Physicians and Obesity and Nutrition Council (*Lum, Biunno & Tompkins*, attorneys; *Charles H. Hoens, Jr.*, of counsel; *David C. Dreifuss*, on the brief).

*Heikki Leesment*, Deputy Attorney General, argued the cause for respondent (*John J. Degnan*, Attorney General, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel; *Heikki Leesment*, on the brief).

The opinion of the court was delivered by

MORGAN, J. A. D.

At issue in this appeal is the validity of a regulation adopted by the Board of Medical Examiners (hereinafter "Board") which, in explicit terms, proscribes physician use of amphetamines or amphetamine-type drugs, classified as Schedule II controlled dangerous substances, in the treatment of exogenous obesity.

*N.J.A.C.* 13:35–6.16 provides:

Uses of amphetamines and sympathomimetic amine drugs

(a) No physician shall prescribe, order, dispense, administer, sell or transfer any amphetamine or sympathomimetic amine drug or compound designated as a Schedule II Controlled Dangerous Substance pursuant to the laws of New Jersey, to or for any person except:

1. For the treatment of:

i. Narcolepsy;

ii. Hyperkinesis;

iii. Drug induced brain dysfunction;

iv. Epilepsy;

v. Depression shown to be refractory to other therapeutic modalities; or

2. For the differential diagnostic psychiatric evaluation of depression. or

3. For the clinical investigation of the effects of such drugs or compounds in which case, in addition to other requirements of applicable laws, prior application therefor shall have been made to the Board of Medical Examiners and approval granted before any such investigation is begun.

(b) In addition of the prohibitions set forth in subsection (a) hereinabove, no physician shall prescribe, order, dispense, administer, sell or transfer any amphetamine or sympathomimetic amine drug or compound designated as a Schedule II Controlled Dangerous Substance pursuant to the laws of New Jersey, for use in weight management, dieting or any other anorectic purpose, or for the treatment of fatigue.

(c) Violation of any of the foregoing may be deemed to constitute one or more of the following:

1. Distribution or dispensing of a controlled dangerous substance in an indiscriminate manner, not in good faith, or without good cause, pursuant to N.J.S.A. 45:1–13; or

2. Gross malpractice, gross neglect, or gross incompetence in the practice of medicine, pursuant to N.J.S.A. 45:1–21(d); or

3. Professional misconduct in the practice of medicine, pursuant to N.J.S.A. 45:1–21(e).

(d) The following list, although not exhaustive or exclusive, does include many of the generic and brand-name Schedule II drugs available as of September 1, 1978, which fall within the above regulation:

1. Amphetamine;

2. Benzedrine;

3. Biphetamine;

4. Desozyn;

5. Dexamyl;

6. Dexedrine;

7. Dextroamphetamine;

8. Eskatrol;

9. Fetamin;

10. Methamphetamine;

11. Methylphenidate;

12. Obetrol;

13. Obotan;

14. Phenmetrazine;

15. Preludin; and

16. Ritalin.

In the Board's request for Attorney General approval of the regulation, Dr. Edwin Albano, president of the Board, set forth its intended purpose in the following terms:

> The proposed rule would provide needed uniformity in the prescribing practices of physicians throughout the state, and would obviate the need for expert testimony in future prosecutions for indiscriminate dispensing of these drugs. The expected benefits should include a severe reduction in the black-market availability of these Controlled Dangerous Substances, with fewer people abusing and addicted to these drugs.

Those who are challenging this regulation as appellants are two drug manufacturing companies, Lemmon Company (Lemmon) and Boehringer Ingleheim Ltd. (Boehringer), and one medical society, American Society of Bariatric Physicians and Obesity and Nutritional Council (Physicians). All challenge the power of the Board to adopt the regulation as it pertains to treatment of exogenous obesity and contend, in addition, that the regulation is arbitrary, capricious and inconsistent with sound medical practice. They further contend that the regulation is in conflict with controlling state law and being also in conflict with federal law violates the Supremacy Clause of the United States Constitution. Moreover, its lack of relationship to a legitimate governmental objective constitutes, according to appellants, a deprivation of due process rights of patients, physicians and manufacturers.

The record on this appeal consists of medical literature relied upon by the Board in its adoption of the challenged regulation as well as material filed with the Board by those opposing its adoption. Although the material reflects some divergence in viewpoint concerning some of the issues relevant to this controversy, a surprising amount of consensus is present. Thus, all seem to agree that obesity is not a matter of strictly cosmetic significance but presents a serious health problem in this State and country, associated as it is with increased risks of angina pectoris, hypertension, myocardial infarction, diabetes mellitus and sudden death. There also seems to be general agreement that some beneficial effects in its treatment are to be derived from those Schedule II amphetamine or amphetamine-like drugs at which the challenged regulation is directed.

Without becoming overly involved in the factual-medical intricacies of the matter, the essential controversy reflected in the arguments made to us and the material on file with the Board concerns the relationship between the benefits to be derived from use of such drugs in the treatment of obesity and the hazards to the patient and to the public from the medically prescribed use of such drugs for such a condition. Those who oppose the regulation deplore what they view as the Draconian means to curb the abuse and unlawful trafficking in amphetamines by proscribing entirely its use in weight management. They point to approval of amphetamines by the Federal Food and Drug Administration as being effective and safe in weight control in short-term use and under careful medical supervision. Those in support of the regulation point to authoritative opinion, which we view as reflecting the clearly preponderant medical view on this record, that the benefits to be derived from the use of amphetamines and their Schedule II counterparts are marginal, and are in any event clearly outweighed by the substantial risk of physical and psychic dependence by the patient and the abuse by others who unlawfully obtain the prescribed drug. Moreover, they refer to other drugs of equal effectiveness which are available as adjuncts to calorie control in weight management programs without subjecting the patient and public to risks associated with amphetamine use. The challenged regulation reflects the Board's adoption of this latter view and carefully limits the use of Schedule II amphetamines and amphetamine-like drugs to a few syndromes unassociated with obesity for which they are recognized as being effective and proscribing entirely their use in the treatment of exogenous obesity.

■ The most fundamental challenge is to the Board's power to adopt the regulation. Appellants contend that the Board's proscription against physician use of Schedule II drugs in the treatment of obesity is unnecessary, is inconsistent with state and federal law and is, accordingly, in conflict with *N.J.S.A.* 45:9–2, the statute empowering the Board to adopt rules and regulations.

> . . . It [the Board] shall make and adopt all necessary rules, regulations and bylaws not inconsistent with the laws of the State or of the United States, whereby to perform the duties and to transact the business required under the provisions of this article (*N.J.S.A.* 45:9–1)

We disagree with all these contentions. The Board's rule-making power derives, in the final analysis, from its need to "perform the duties" and "transact the business" which the Legislature imposed upon it by specific statutory provision. A rule, under *N.J.S.A.* 45:9–2, becomes necessary when it implements a Board obligation. For example, *N.J.S.A.* 45:9–6 requires every person commencing the practice of medicine and surgery to apply to the Board for a license. Implementation of that provision requires the Board to draft applications seeking the information it requires to and set up the administrative machinery to receive such applications. To the extent that rules adopted by the Board implement the Board's duties to receive applications for licensure, they must be regarded as necessary within the meaning of *N.J.S.A.* 45:9–2. As long as a rule is reasonably related to a legislatively imposed duty of the Board, it will be regarded by this court as complying with the "necessary" standard of *N.J.S.A.* 45:9–2.

In our view, the Board's power to adopt the challenged rule derives from *N.J.S.A.* 45:1–13, effective March 1976, which provides:

> It shall be a valid ground for the refusal to grant, revocation or suspension of a license to practice a health care profession, subject to regulation in this State, including the practice of pharmacy, or for the refusal to admit to an examination a candidate for licensure, that the licensee has prescribed or dispensed a controlled dangerous substance or substances, as defined by the "New Jersey Controlled Dangerous Substances Act", (P.L.1970, c. 226) (C. 24:21–1 et seq.), in an indiscriminate manner, or not in good faith, or without good cause, or where the licensee reasonably knows or should have known that the substance or substances prescribed are to be used for unauthorized or illicit consumption or distribution or that a substance or substances previously prescribed or dispensed were used by the patient for unauthorized or illicit consumption or distribution.

By the rule under discussion the Board has endeavored to give advance notice to doctors and surgeons subject to its jurisdiction that it will not regard the treatment of exogenous obesity as "good cause" for the prescription of Schedule II amphetamines or amphetamine-like drugs. In our view, the Board has power to discipline a physician for such conduct in the absence of a

rule. Accordingly, it must have the power to advise physicians in advance, by rule, of what it proposes to do. The material on file with the Board overwhelmingly supports the Board's position reflected in this regulation.

■ We do not regard the regulation as being in conflict with federal law as appellants contend. That the Federal Food and Drug Administration has recognized the utility of amphetamines in weight management programs when used over the short term and carefully supervised does not produce conflict with the challenged regulation. The federal view permits, does not command, amphetamines to be used in the treatment of obesity. The Board is not by this regulation forbidding what federal law mandates be done. We perceive no inconsistency between the regulation and federal law.

■ Nor is our conclusion any different when the regulation is examined against state law. Although it is true, as appellants contend, that the Commissioner of Health, and not the Board, has the responsibility for classifying controlled dangerous substances, *N.J.S.A.* 24:21-3, the power and responsibility of the Commissioner of Health do not, expressly or impliedly, prevent the Board from acting in obedience to obligations which the Legislature has imposed. The Board has not in the regulation undertaken to classify controlled dangerous substances. It has merely announced its position that the prescription of amphetamines, designated by the Commissioner of Health as Schedule II substances, for the treatment of exogenous obesity will be regarded by the Board as having been made without good cause within the meaning of *N.J.S.A.* 45:1-13. We perceive no conflict or inconsistency.

■ Finally, we do not view the challenged regulation as being inconsistent with *N.J.S.A.* 45:1-13 for the same reasons.

■ The contention of the appellant association of physicians that the regulation violates a patient's constitutional right of privacy is clearly without merit. There is no question but that to the extent a physician is not permitted to prescribe

Schedule II amphetamines as treatment for obesity, his judgment in that regard has been superseded by the Board. The same, however, is true with respect to any drug whose use is totally proscribed, such as those on Schedule I. There are, no doubt, doctors who would prescribe heroin for terminal cancer patients if they were legally permitted to do so. That they are not so permitted by current law is not, however, a violation of their patient's right of privacy. The same is true with respect to the permitted uses of Schedule II amphetamines. A physician's right to practice his profession, and prescribe drugs, is as subject to law as is any other profession.

█ The challenged regulation concerns the dispensing of controlled dangerous substances, albeit by a physician's prescription. The government's vital concern with the movement and disbursement of such narcotic and addictive substances is too clear to require citation. Although the means chosen by the Board to implement the policy expressed in *N.J.S.A.* 45:1–13 may be open to debate, there can be no doubt but that those means are at least reasonably related to such a purpose. That other means exist or that some would employ such other means, or that such other means would yield better results in the opinion of some, does not disrupt the reasonable relationship between regulation and legitimate governmental objective which clearly exists in this matter. In so ruling, we emphasize that the challenged regulation concerns a controlled dangerous substance and our ruling is only with respect to a regulation concerning such a substance. *N.J.S.A* 45:1–13. We leave for a more appropriate case a determination of the extent of the Board's power with respect to drugs not so classified.

In summary, the challenged regulation represents an exercise of the Board's power to implement legislative policy described in *N.J.S.A.* 45:1–13, a necessary regulation not inconsistent with state or federal law, or in violation of state or federal constitutional guarantees. The regulation is reasonably related to the legitimate governmental objective of controlling the traffic in controlled dangerous substances, and the means chosen to deal with this problem, although open to debate, finds more than

substantial support in the record of this appeal. The remaining contentions made with respect to the alleged invalidity of this regulation are clearly without merit. *R.* 2:11–3(e)(1)(E).

Affirmed.