**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1151-16T4

ALLSTATE NEW JERSEY INSURANCE
COMPANY, ALLSTATE INSURANCE
COMPANY, ALLSTATE INDEMNITY
COMPANY, ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
ALLSTATE NEW JERSEY PROPERTY
AND CASUALTY INSURANCE COMPANY,
and ENCOMPASS INSURANCE, f/k/a
CONTINENTAL INSURANCE COMPANY,
and COMMERCIAL INSURANCE
COMPANY OF NEWARK, N.J.,

        Plaintiffs-Respondents,

v.

GREGORIO LAJARA; PEDRO GONZALEZ;
MILEYDIS T. DIAZ a/k/a MILLY DIAZ;
AWILDA D. RODRIGUEZ a/k/a AWILDA D.
GONZALEZ; KENNETH J. VIAFORA;
JOSE ORLANDO HERNANDEZ;
FRANCISCA HERNANDEZ; FRANCISCO
CABA; AQUALINA RAMOS; HARSHAD
PATEL; ASHRAF Y. AZIR; MUHAMMAD
A. SHAMSHAIR; MICHAEL C. GOLOWSKI;
ELVIA BEDOYA; NYDIA MARTINEZ;
NEREDA ZUNIGA; ALEXANDRA
GALLEGOS; BIBARS KAGHDOU, D.C.;
STEPHEN LOMANTO, D.C.; DAVID

STEPHENS, D.C.; THOMAS J. BONACUSO, D.C.; MICHAEL CARLESIMO, D.C.; BRYAN SIEGEL, D.C.; KEITH LEWANDOWNSKI, D.C.; WEI JU; LUCY LIU; JIANMIN LI, a/k/a JIAN MIN LI; SHAN S. NAGENDRA, M.D.; ALEKSANDR LEVIN, M.D.; MANOJ D. PATHARKAR, M.D.; ALFRED REZK TAWADROUS, M.D.; HOWARD KESSLER, M.D.; DAVID WALKER, ESQ.; MEDICO MANAGEMENT CO., INC.; UNION COLLECTIONS, LLC; PLAINFIELD MEDICAL MANAGEMENT, INC.; SPINAL ADJUSTMENT CENTER, INC.; RAHWAY SPINAL INJURY PC f/k/a RAHWAY SPINAL CENTER CORP.; ADVANCED SPINAL CARE, PC; MILLENNIUM TOTAL HEALTH, PC; ALEVE CHIROPRACTIC, PC; IN-LINE CHIROPRACTIC, PC; BAYVIEW HEALTH, PC a/k/a BAYVIEW HEALTH SERVICE, PC; BOUND BROOK CHIROPRACTIC, PC; NEW WAVE CHIROPRACTIC, PC; ABSOLUTE CHIROPRACTIC, PC; BACK PAIN PC; AM PAIN CARE, PC; ACUPUNCTURE ACADEMY PC; TCM ACUPUNCTURE, PC; AMERICAN ACUPUNCTURE ACADEMY, PC; CONVERY MEDICAL GROUP, PC; RARITAN PAIN MANAGEMENT AND REHAB CENTER, PC; ASBURY MEDICAL AND REHABILITATION PC; PAIN MANAGEMENT ASSOCIATES OF CENTRAL JERSEY, PA; BEST HEALTH MEDICAL, PC; PERTH AMBOY HEALTH CARE, LLC d/b/a "PERTH AMBOY DIAGNOSTIC IMAGING"; A.P. DIAGNOSTIC IMAGING, INC.; LIBERTY SUPPLIES, LLC; K-MED SERVICES, INC.; PRESTIGE MEDICAL SUPPLIES, LLC; THERAPEUTIC DEVICES, INC.,

Defendants,

and

NATALIO DAMIEN, M.D.,

Defendant-Appellant,

and

COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE,

Plaintiff/Intervenor-Respondent.

_____

Submitted September 12, 2018 – Decided March 8, 2019

Before Judges Yannotti, Gilson, and Natali.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-4091-08.

Bramnick, Rodriguez, Grabas, Arnold & Mangan, LLC, attorneys for appellant Natalio Damien, M.D. (Carl A. Salisbury, on the briefs).

Pringle Quinn Anzano, PC, attorneys for respondent Allstate New Jersey Insurance Company (Daniel S. Hunczak and Doris Cheung, on the briefs).

Brach Eichler LLC, attorneys for amici curiae Medical Society of New Jersey and Radiological Society of New Jersey (John D. Fanburg, of counsel; Joseph M. Gorrell, of counsel and on the brief; Richard B. Robins, on the brief.)

A-1151-16T4

PER CURIAM

Defendant Natalio Damien, M.D., (Damien) appeals from an August 31, 2016 final order that dismissed claims against him, but which ordered defendants A.P. Diagnostic Imaging, Inc. (APDI) and Harshad Patel (Patel) to disgorge payments they received "based on Dr. Damien's violations" of N.J.A.C. 13:35-2.6(m)(3), (m)(6), (m)(7), and (k)(8) (2005). Damien seeks reversal of a December 8, 2015 decision that he violated those provisions, which the court issued in a statement of reasons disposing of cross-motions for summary judgment filed by plaintiffs Allstate New Jersey Insurance Company, Encompass Insurance Company, their related entities (collectively, Allstate), and defendants Damien, APDI, and Patel. Damien also challenges the court's April 4, 2016 decision denying reconsideration of the December 8, 2015 decision. Having considered the parties' arguments in light of the record, we reverse the court's determination that Damien violated paragraphs (k)(8) and (m)(7), but affirm its decision as to paragraphs (m)(3) and (m)(6).

I.

Damien is a diagnostic radiologist certified by the New Jersey State Board of Medical Examiners (the Board or BME). By 2005, Damien began reading and interpreting MRIs and x-rays for APDI, a diagnostic testing

facility that provides medical imaging services on a referral basis. Damien became the medical director for the APDI facility located in Edison, New Jersey, in 2008. At all relevant times, Allstate provided insurance coverage to some of APDI's referred patients (the insureds).

On December 15, 2008, Allstate filed a complaint alleging APDI, Patel, Damien, and sixty other defendants violated several regulations and statutes, including the New Jersey Insurance Fraud Prevention Act (IFPA), N.J.S.A. 17:33A-1 to -30, by engaging in a widespread automobile insurance fraud scheme.[1] In Count 27, Allstate sought a declaratory judgment that Damien, APDI, and co-defendants violated, among other regulations, N.J.A.C. 13:35-2.6(k)(8) and (m) by: performing diagnostic tests that were not medically necessary; failing to disclose in MRI reports the existence of prior tests performed on an insured that were "pertinent to" the same insured's presenting medical condition or injury; and failing to "institute or follow procedures to assure that sufficient clinical data was provided" to justify the requested tests.

In Count 28, Allstate sought disgorgement of the payments those defendants purportedly received in connection with their alleged regulatory violations. Count 29 alleged those defendants fraudulently, knowingly, and

---

[1] The parties have not included the entire complaint in the record.

intentionally misled Allstate to believe the tests were medically necessary and were performed in accordance with the administrative regulations, and that they knowingly benefitted from that misconduct in violation of IFPA.

The Commissioner of the New Jersey Department of Banking and Insurance (Commissioner) filed a motion to intervene, and for leave to file an amended complaint as a co-plaintiff, which the court granted on January 6, 2012. The parties engaged in extensive discovery during which they explored the practices and protocols in place at APDI during the timeframe of the allegedly unlawful activity.

For example, at an April 17, 2013 deposition, an MRI technician for APDI from February 2003 to November 2005, Stuart Orange, testified that APDI did not provide him with a physical written policy, procedure, protocol, or manual to follow with respect to performing MRIs. Orange also testified that, other than checking for contraindications (e.g., a pacemaker or metal in the body) and claustrophobia, the prerequisite for testing at APDI was a prescription.

APDI's corporate designee Rajesh Bhagat similarly testified at a June 12, 2013 deposition that medical doctors at APDI "do not" take patient histories prior to testing and that APDI used "the same process" for testing patients

6

regardless of whether a chiropractor, medical doctor, or osteopath referred the patient. Bhagat further stated that APDI "is not there to decide medical necessity. Our facility is licensed to do the testing."

Damien testified at his deposition that while he worked for APDI, he did not examine patients or "look at" their files prior to the tests. In addition, from March 2005 to March 2011, Damien prepared reports that do not cross-reference any other tests, even though there were prior tests performed at the same facility on the same insured.

Similarly, Thurairasah Vijayanathan, M.D., who also read films and was a medical director at APDI, testified at his deposition that he never reviewed patient files before tests were performed and never examined patients to determine whether a medical necessity existed for the test. He opined, "it is impossible for a radiologist reading all the teleradiology to decide whether . . . there's a medical necessity or not." When discussing "an appropriate test," however, Vijayanathan testified that, "for example, [if] the patient has headaches, and they are giving you an MRI of the foot, you have to find out what happened. Somebody made a mistake." Vijayanathan stated he believed the medical director would bear ultimate responsibility for such a mistake.

A-1151-16T4

Malini Jayarama, an imaging technician at APDI who became an administrator in 2003 or 2004, testified at her deposition that prior to testing, she would check patients for contraindications, allergies, and pregnancy, but "[n]ever" examined patients to determine if testing was medically necessary.

At all relevant times, N.J.A.C. 13:35-2.6(k)(8) required referral-receiving physicians to prepare a "comprehensive report" containing "[c]ross-references to any other tests performed on the same patient pertinent to the patient's presenting medical condition or injuries, if not addressed in a consolidated report . . . ."  Further, N.J.A.C. 13:35-2.6(m) (2008) provided:

> Any practitioner, in any location, whether or not licensed by DOHSS, accepting a referral for the performance of a diagnostic test, except with respect to emergency care, shall:
>
> 1. Require that the referral be preceded by verbal communication or delivery of the written request (which may be faxed) as set forth in (l) above;[2]

---

[2] N.J.A.C. 13:35-2.6(l) (2008) mandated that practitioners who requested another practitioner perform a "clinically supported" diagnostic test, id. at (b)(2), to make that request:

> in writing or by a personal communication documented in the patient record . . . setting forth: 1) The patient's reported symptoms and objective signs, if any, pertinent to the problem; 2) A brief history of the reported medical condition; and 3) An indication

(continued)

2. Retain a copy of the referring request or document the personal communication in the patient record;

3. Institute a procedure to assure that sufficient clinical data has been provided to justify the requested test;

4. Personally consult with the referring practitioner in advance of performing the test, if additional information is needed to determine if the diagnostic test requested is the most appropriate test to elicit the clinical information sought;

5. Perform a focused clinical examination if, in the practitioner's discretion, such examination is necessary;

6. Verify the indications for and appropriateness of diagnostic testing, if the referral has been made by a practitioner with a limited license to a plenary licensee;

7. Prepare a report containing the information set forth in section (k) above; and

8. Assure that explanation has been provided to the patient and, where there is significant risk or likelihood of side effects, obtain informed consent.[3]

---

(continued)

       of prior testing relating to the medical condition and results thereof.

[3] By amendment effective January 2, 2018, 50 N.J.R. 209(a) (Jan. 2, 2018), the Board revised subsections (k) through (n), and other subsections of the

(continued)

Allstate filed a motion for partial summary judgment against APDI and Damien with respect to Counts 27 and 28, and sought disgorgement in the amount of $188,038.72. Allstate claimed APDI and Damien violated N.J.A.C. 13:35-2.6(m)(3) and (m)(6) by failing "to verify the necessity and appropriateness" of diagnostic tests requested by chiropractors and "did not review a patient's file for medical necessity before the MRI test was performed on the patient at APDI." Further, Allstate argued that APDI and Damien violated N.J.A.C. 13:35-2.6(k)(8) and (m)(7) because "none of the test reports" that they prepared referenced any prior tests performed on the same insured.

Allstate did not submit expert testimony to support its interpretation of N.J.A.C. 13:35-2.6(k)(8). Instead, Allstate offered a certification of a non-physician, special investigation unit analyst, Benjamin J. Hickey, which attached as exhibits certain reports prepared by Damien and other practitioners, and concluded that "none of the reports contain cross-references to any other tests performed on the same patient pertaining to that patient's presenting injury or condition."

(continued)
regulation, in an effort to "assur[e] that the rules are not interpreted in such a way as to have a negative impact on the quality, cost, or access to diagnostic testing or screening services." 49 N.J.R. 1660(a) (June 19, 2017).

Damien and APDI opposed Allstate's motion and filed a cross-motion for summary judgment. APDI claimed that as a diagnostic office licensed by the State Department of Health and Senior Services, the BME regulations did not apply to it. Damien maintained he fully complied with the regulations. Further, APDI and Damien claimed that if the court adopted Allstate's interpretation of N.J.A.C. 13:35-2.6(m)(6), Damien and "similarly situated physicians" would be required to discriminate against referrals from chiropractors in violation of N.J.A.C. 13:35-6.9.[4] Damien and APDI also argued that Allstate was required, but failed, to produce expert testimony to substantiate its claim that Damien violated N.J.A.C. 13:35-2.6(k)(8).

At a December 8, 2015 hearing, a motion judge heard oral arguments and issued a written statement of reasons detailing the court's decision on the cross-motions for summary judgment. The court decided the regulations at issue applied to Damien, but not to APDI, and stated there was no factual

---

[4] N.J.A.C. 13:35-6.9(b) requires physicians with plenary licenses to "provide diagnostic radiological services to [a requesting] chiropractic or podiatric physician without discrimination on the basis of classification of license, provided the diagnostic radiological services requested pertain to skeletal areas of the body." Further, N.J.A.C. 13:35-6.9(c) provides that "[d]enial of professional diagnostic radiological services, as set forth herein, shall constitute purposeful and intentional discrimination and shall subject the licensee to appropriate disciplinary action by the [BME]."

11

dispute that Damien failed to follow the regulatory protocol and, accordingly, concluded "a judgment on liability will . . . be entered against him for those tests for which he was responsible."

The court based its decision on Damien's and Vijayanathan's deposition testimony that they did not "examine patients referred by limited licensees . . . to verify the necessity and appropriateness of the diagnostic test and did not review the patient's file to determine necessity, in violation of [N.J.S.A. 13:35-2.6](m)(3) and (6)." The court also found expert testimony was not required to prove Damien violated N.J.A.C. 13:35-2.6(k)(8). Thus, the court determined, "on those films for which [Damien] was responsible, the mandatory protocol established by N.J.A.C. 13:35-2.6(k)(8) and (m) was not followed" and "Damien shall disgorge all payments made by Allstate . . . ."

Trial proceedings on the remaining counts against Damien and other defendants began on January 4, 2016. On January 13, 2016, while the bench trial was ongoing, the BME met to discuss the court's December 8, 2015 decision and announced in a document entitled "open board minutes":

> The Board using its expertise carefully considered the [court's December 8, 2015] decision in conjunction with its regulations specifically N.J.A.C. 13:35-2.6(k)(8), (m)(3), [and] (m)(6) and found that the language of the [fifteen] year old regulation is capable of being interpreted in a manner that is inconsistent

with how the delivery of diagnostic testing services are actually scheduled and conducted. Indeed, the decision interprets the regulation in an expansive manner which was never the intent of the Board. Further, it appears to impose obligations, such as a physical examination and record review, on radiologists which are not practical, the medical standard or the intent of the Board. It is the Board's interpretation of the regulation that a radiologist's reliance on a legitimate prescription from a licensee legally authorized to make the referral for a diagnostic test is sufficient indication of appropriateness to accept the referral. Any further review prior to the performance of the diagnostic test is left to the professional discretion of the radiologist and not imposed as mandatory protocol by the Board regulation.

The minutes also explained, "[i]t is the position of the Board that it is within the Board's jurisdiction to make findings as to whether or not Board regulations are violated by a Board licensee (especially in a case like [this case] where Board expertise should be utilized in interpreting the regulation)."

On February 29, 2016, APDI and Damien filed a motion for reconsideration of the court's December 8, 2015 decision based on the BME's open board minutes. Counsel for the Commissioner submitted a letter to the trial court, enclosing the open board minutes and explaining: 1) the minutes were "draft minutes"; 2) the BME "typically approves minutes of a particular

meeting at a subsequent meeting"; and 3) the next meeting was scheduled for March 9, 2016.[5]

At an April 4, 2016 hearing on the motion for reconsideration, the court found:

> that the comments - the unsolicited and surprising letter from the attorney for the Board of Medical Examiners is not evidence, that it is not compelling. And, therefore, the [c]ourt[,] while it certainly understands why the motion [for reconsideration] would be made[,] respectfully declines it.

On April 18, 2016, the court rendered its decision on the IFPA claims that Allstate filed against Damien. The court found:

> As I've stated in this matter, [the motion judge] has already made a finding that there were Administrative Code violations by Dr. Damien that resulted in the determination that he is required to pay back any monies paid by Allstate, based upon his report submitted to that entity. I am not changing that decision in any way . . . .
>
>      . . . .

---

[5] Damien's brief advises that the Board "subsequently adopted the minutes as drafted and published them on the Board's website." However, aside from the Commissioner's counsel's letter, there is no indication in the record or the website to which Damien directs our attention as to when that "subsequent adopt[ion]" by the Board occurred. Thus, there is no competent evidence in the record that the Board had adopted the draft minutes prior to the April 4, 2016 hearing.

> Be that as it may, I cannot find that anything Dr. Damien has done constitutes a violation of [IFPA]. His reports were his genuine and credible findings and there was nothing misleading about them. I further find that he did not conspire with anybody, including Harshad Patel, to mislead insurance companies regarding payment . . . for medical bills.
>
> And based upon all of the above the case of insurance fraud against Dr. Damien is dismissed with prejudice.

Consistent with these findings, the court signed a verdict sheet on April 18, 2016, which found, among other things, that plaintiffs failed to prove Damien, APDI, and Patel had committed insurance fraud under IFPA "as a result of violations" of N.J.A.C. 13:35-2.8(k)(8), (m)(3), (m)(6), and (m)(7).[6]

The trial judge entered final orders of judgment on June 29, 2016, resulting in judgments amounting to approximately ten million dollars in favor of Allstate against APDI, Patel, and eight other defendants, but not Damien, and a judgment in favor of the Commissioner. The June 29, 2016 orders do not appear to have been based on the court's December 8, 2015 decision because on or about July 18, 2016, Allstate filed a motion for certification of

---

[6] According to the court's April 18, 2016 decision, Allstate argued at trial the motion judge's December 8, 2015 determination that Damien violated N.J.A.C. 13:35-2.6(k)(8) and (m) was "evidence" that Damien violated the IFPA.

the court's December 8, 2015 statement of reasons and sought disgorgement from Damien, APDI, and Patel pursuant to the December 8, 2015 decision.

Following oral argument on that post-trial motion,[7] the trial judge entered an August 31, 2016 final order of judgment denying Allstate's motion for disgorgement from Damien because it was "conceded by all parties that Dr. Damien did not receive any payments" from Allstate to disgorge. In addition, the order purports to dismiss with prejudice "all counts" against Damien. However, the court's order required that any payments made to APDI and Patel "based upon Dr. Damien's violations of the New Jersey Administrative Code" were to be returned by APDI and Patel under Counts 27 and 28 of Allstate's complaint. Thus, with respect to Damien, the August 31, 2016 order dismissed all counts against him except Count 27 because the August 31, 2016 order, by its own terms, was predicated upon the court's December 8, 2015 decision that Damien violated the regulations under Count 27.

Several cross-appeals were filed by various parties. On May 18, 2017, we granted the Medical Society of New Jersey and Radiological Society of New Jersey's motion to appear as amici curiae. All of the remaining

---

[7] The parties did not include the transcript of that oral argument in the record.

defendant-appellants have settled their appeals, except for Damien, who remains the lone appellant before us.

## II.

Before reaching the merits, we address a procedural and a justiciability issue. First, for reasons unclear from the record, the court failed to render an order or judgment on the parties' summary judgment motions, contrary to Rule 4:46-2(c), or an order memorializing its April 4, 2016 decision denying Damien's motion for reconsideration. We recognize that appeals ordinarily are taken only from orders or judgments. In re Berkeley, 311 N.J. Super. 99, 101 (App. Div. 1998). However, "[w]e have at times opted to overlook technical insufficiencies in order to reach the merits of [an] appeal." State v. Benjamin, 442 N.J. Super. 258, 262 (App. Div. 2015). Here, the August 31, 2016 final order clearly incorporated the December 8, 2015 and April 4, 2016 interlocutory decisions as the final order was entered against APDI and Patel "based upon Dr. Damien's violations" of the regulations as determined by the interlocutory decisions. Further, at the April 4, 2016 reconsideration hearing, the court determined its December 8, 2015 decision was "an interlocutory order," and at the April 18, 2016 hearing, the court stated the December 8, 2015 decision was an entry of summary judgment against Damien for

violations of N.J.A.C. 13:35-2.6(k)(8), (m)(3), and (m)(6). Accordingly, we address the merits of the court's December 8, 2015 and April 4, 2016 decisions, despite the absence of a formal order.

Second, we acknowledge that "[o]nly a party aggrieved by a judgment may appeal therefrom." Howard Sav. Inst. of Newark, N.J. v. Peep, 34 N.J. 494, 499 (1961). Here, the August 31, 2016 final order, which Damien identified in his case information statement as an order from which he appealed, dismissed the claims against him, which would suggest that Damien is not an aggrieved party. However, that final order, by its express terms, was entered against APDI and Patel "based upon Dr. Damien's violations" of the administrative code and after the court determined at the April 18, 2016 hearing that it would not change the December 8, 2015 decision "in any way." Because "a party aggrieved is one whose personal or pecuniary interests, or property rights, have been injuriously affected by the order or decree," Eugster v. Eugster, 89 N.J. Eq. 531, 533 (E. & A. 1918), we conclude the reputational harm that may visit Damien as a licensed professional adjudicated to have practiced his profession in violation of the law is sufficiently injurious to his professional and personal interests to be considered an aggrieved party for purposes of this appeal.

III.

Turning to the merits, Damien maintains the court incorrectly interpreted N.J.A.C. 13:35-2.6(m)(3) and (m)(6) as requiring radiologists to examine patients and review their records and medical files to determine whether diagnostic testing was "medically necessary" for every patient referred by a limited licensee, such as a chiropractor.[8]  Specifically, he claims the court's interpretation is contrary to the BME's intent and placed Damien "and all other New Jersey radiologists in jeopardy of violating" N.J.A.C. 13:35-6.9, which prohibits plenary licensees from denying referrals based on a limited licensee's status as such.  Further, Damien argues his mere receipt of a referral from a licensed practitioner constituted compliance with paragraphs (m)(3) and (m)(6), which he contends required only that he verify the referring practitioner had complied with N.J.A.C. 13:35-2.6(l) (2014).

Similarly, amici contend the court's decision imposes a "more difficult" standard of care for radiologists to satisfy than was "contemplated by the regulation" by "forcing" radiologists to determine the "medical necessity" of a

---

[8]  See N.J.A.C. 13:35-6.16(f)(3)(i) (explaining chiropractors are practitioners with a limited scope of license, i.e. limited licensees, as opposed to plenary licensees).

patient's prescribed test when the radiologist "may not have the expertise" to make that determination.[9]

In addition, Damien claims the court incorrectly concluded expert testimony was not necessary for Allstate to prevail on its claim under N.J.A.C. 13:35-2.6(k)(8). Specifically, Damien maintains that whether a prior test was pertinent to a patient's presenting medical condition or injury under paragraph (k)(8) "requires an evaluation by a competent and qualified medical professional because the medical and diagnostic relationship of a prior test to a patient's presenting medical condition is beyond the ken of the average finder of fact." Further, Damien claims subsection (l) required the referring physician to reference any relevant prior tests, and that he was "entitled to presume" the referring practitioner complied with that duty and no pertinent

---

[9] Amici also inject a new issue into this appeal: whether Allstate had a private cause of action to institute this litigation. "[A]s a general rule an amicus curiae must accept the case before the court as presented by the parties and cannot raise issues not raised by the parties." Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 48-49 (1982). Although Allstate responded to this issue in its opposition brief, the issue was not raised by the parties during the seven years of proceedings before the trial court, so we conclude its resolution "should await a case in which the issue is squarely presented." See Byram Twp. Bd. of Ed. v. Byram Twp. Ed. Ass'n, 152 N.J. Super. 12, 18 (App. Div. 1977); see also State v. Gandhi, 201 N.J. 161, 191 (2010); Fed. Pac. Elec. Co. v. N.J. Dep't of Envtl. Prot., 334 N.J. Super. 323, 345 (App. Div. 2000).

prior test existed when the referral did not mention such tests. Thus, he claims he was not at fault under paragraph (k)(8) for failing to cross-reference any test not mentioned in the referral, even if those tests were pertinent.

We agree with Damien that expert testimony was required for Allstate to satisfy its burden under subsection (k)(8). We also agree with Damien and amici that the trial court incorrectly interpreted the regulations as requiring Damien to conduct a physical examination of any patient to determine the medical necessity of testing. Further, we agree with Damien that a referral-receiving practitioner could satisfy paragraph (m)(6), by verifying the referring practitioner complied with subsection (l).

However, we disagree with Damien that he was "entitled to presume" the referring practitioner had complied with subsection (l) and that his mere receipt of a referral constituted compliance with N.J.A.C. 13:35-2.6(m)(3) and (m)(6). Accordingly, because Damien failed to present any competent evidence in opposition to Allstate's summary judgment motion that he instituted a procedure to ensure the referring practitioner complied with subsection (l), or that he ever used particular care with respect to referrals from limited licensees, we affirm on those limited grounds.

IV.

We review summary judgment rulings de novo and apply the same standard as the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Summary judgment is appropriate when there is "no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). A disputed fact is material if its resolution in the non-movant's favor ultimately will entitle that party to judgment. Rosenberg v. Otis Elevator Co., 366 N.J. Super. 292, 297 (App. Div. 2004) (quotation omitted). If no material factual issue exists, our inquiry is limited to "whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quotation omitted).

When interpreting a regulation, the "paramount goal" is to discern the intent of its drafters. US Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012).

 A-1151-16T4

That process begins with the regulation's plain language, giving the words used their ordinary meaning unless they clearly have a technical or special meaning. Safeway Trails, Inc. v. Furman, 41 N.J. 467, 478 (1964). We construe the text of the enactment "in context with related provisions so as to give sense" to the regulation "as a whole." Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 570 (2017)); see N.J.S.A. 1:1-1. "We do not add terms which may have been intentionally omitted," State v. Perry, 439 N.J. Super. 514, 523 (App. Div. 2015), and where the drafters have "carefully employed a term in one place and excluded it in another, it should not be implied where excluded," GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 308 (1993).

If a regulation is amenable "to more than one plausible interpretation," we may resort to extrinsic evidence of the drafters' intent. Bedford v. Riello, 195 N.J. 210, 222 (2008). That extrinsic evidence includes an agency's interpretation of its own regulation, to which we usually defer unless the interpretation is "plainly unreasonable." Hough, 210 N.J. at 200 (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). Applying these principles to the facts and regulation before us, we begin our analysis with paragraphs (k)(8) and (m)(7).

23

A.

Pursuant to N.J.A.C. 13:35-2.6(k)(8) (2014), Damien was required to "prepare and retain a comprehensive written report" containing "[c]ross-references to any other tests performed on the same patient pertinent to the patient's presenting medical condition or injuries, if not addressed in a consolidated report . . . ." See N.J.A.C. 13:35-2.6(m)(7) (2014) (requiring practitioners to prepare a report containing the information in subsection (k)). The trial court held that because Damien's reports did not cross-reference any prior tests performed on the same patient, Damien violated paragraphs (k)(8) and (m)(7). Further, the court deemed expert testimony on the issue unnecessary because "[o]ne does not need a medical degree to read a report and see whether there are cross-references." We disagree with the court's interpretation and its determination that Allstate could satisfy its burden of proving Damien violated these regulations without offering expert testimony.

Under paragraphs (k)(8) and (m)(7), the only tests that Damien was required to cross-reference were those "pertinent to" the patient's presenting medical condition or injuries. N.J.A.C. 13:35-2.6(k)(8) (2014). This entails a three-step inquiry: 1) what is the patient's presenting medical condition or injury; 2) were other tests performed on the patient; and 3) are any of the prior

tests "pertinent to" the patient's presenting medical condition or injury. Damien's argument that expert testimony is necessary to determine whether a prior test is pertinent to the patient's presenting medical condition or injury has support in the plain language of the regulation and its history.

As originally proposed, N.J.A.C. 13:35-2.6(k)(8) would have required reports to cross-reference "any other tests performed on the same day . . . ." 32 N.J.R. 19(a) (Jan. 3, 2000). In response to comments, the BME amended the proposed rule to require reports to cross-reference "any other tests performed on the same patient pertinent to the patient's presenting medical condition or injuries . . . ." 33 N.J.R. 670(a) (Feb. 20, 2001). As the BME explained:

> [T]he [Radiological] Society objected to the requirement of paragraph (k)[(8)] for cross-referencing the existence and conclusions of separate tests, contending that this should apply only when relevant or pertinent, that is when the multiple tests performed have some sort of relationship to one another.
>
> . . . .
>
> [T]he Board is satisfied that when separate tests have been deemed appropriate in the judgment of the specialist testing practitioner and are or have been performed on the same patient for the same medical condition or injury, they are virtually always relevant or pertinent in treating the "whole patient."
>
> [Ibid.]

The BME's repeated use of "relevant or pertinent" indicates an understanding that those terms were synonymous, an understanding which comports with a common definition of the term. See, e.g., Black's Law Dictionary 1328 (10th ed. 2014) (pertinent defines as "[o]f, relating to, or involving the particular issue at hand; relevant"). Further, the regulatory history defines "relevant or pertinent" tests as those that "have some sort of relationship to one another," and which would "virtually always" encompass tests performed on "the same medical condition or injury . . . ." 33 N.J.R. 670(a) (Feb. 20, 2001).

We conclude that such an analysis required expert testimony, and without those proofs, Allstate failed to carry its burden as a summary judgment movant. See R. 4:46-2(c) (requiring the movant to show there is no genuine issue of material fact); Brill, 142 N.J. at 523 (explaining that whether a material factual issue exists depends on "the competent evidential materials presented"); Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 215-16 (App. Div. 2002) (affirming the trial court's grant of summary judgment to defendant because plaintiff failed to produce necessary expert testimony). Expert testimony is necessary when "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment"

26

as to the reasonableness of a party's conduct. <u>Butler v. Acme Markets, Inc.</u>, 89 N.J. 270, 283 (1982); <u>Nowacki v. Cmty. Med. Ctr.</u>, 279 N.J. Super. 276, 282–83 (App. Div. 1995).

Here, the "matter to be dealt with" is the medical relationship between a patient's prior test and the patient's presenting medical condition or injury. We conclude that a factfinder of ordinary knowledge could not reasonably be expected to interpret a test, diagnose the medical condition or injury indicated by the test, then relate that diagnosis to the patient's presenting medical condition or injury. Accordingly, the court committed error when it decided that Allstate satisfied its burden to show Damien failed to cross-reference "pertinent" prior tests under N.J.A.C. 13:35-2.6(k)(8) without introducing expert evidence to demonstrate that any prior test had some relationship to the challenged report, including that the tests were performed on the same medical condition or injury.

## B.

Under N.J.A.C. 13:35-2.6(m)(3), Damien was required to "[i]nstitute a procedure to assure that sufficient clinical data has been provided to justify the requested test . . . ." In addition, pursuant to paragraph (m)(6), Damien was required to "[v]erify the indications for and appropriateness of diagnostic

testing, if the referral [was] made by a practitioner with a limited license to a plenary licensee . . . ." N.J.A.C. 13:35-2.6(m)(6) (2014). The court addressed paragraph (m)(3) in conjunction with paragraph (m)(6), and concluded that under those rules, Damien was required to "examine patients referred by limited licensees . . . to verify the necessity and appropriateness of the diagnostic test" and to "review the patient's file to determine [the] necessity" of the tests. Specifically, the court found "the gravamen" of Damien's "infraction is that there was no effort to independently determine whether the diagnostic testing requested was medically necessary, as was required by the regulations."

Initially, we reject Damien's claim that the court's interpretation of paragraph (m)(6) placed practitioners "in jeopardy of violating" N.J.A.C. 13:35-6.9. A practitioner violates that regulation by denying a referral from a limited licensee "on the basis of" the referring practitioner's status as a limited licensee. See N.J.A.C. 13:35-6.9(b); Brodie v. State Bd. of Med. Exam'rs, 177 N.J. Super. 523, 530 (App. Div. 1981). The court's interpretation of paragraph (m)(6) did not require Damien to deny any referrals "on the basis of" the scope of the referring practitioner's license. Instead, the court's interpretation required referral-receiving practitioners to perform an independent evaluation

of patients referred by limited licensees to determine whether, in the judgment of the referral-receiving practitioner, the requested testing was medically necessary. Any proper denial of a referral pursuant to the court's interpretation of paragraph (m)(6) would have been based on the referral-receiving practitioner's independent professional judgment, after a physical examination of the patient, that the requested diagnostic testing was not medically necessary.

Nonetheless, we disagree with the court that paragraph (m)(6) required Damien to examine patients referred by limited licensees to determine whether testing was medically necessary. We also disagree with the court's conclusion that paragraph (m)(3) required Damien to institute a procedure of examining patients to determine medical necessity. The only reference to any examination in subsection (m) appears in paragraph (m)(5), which gives the referral-receiving practitioner "discretion" to perform a "focused clinical examination" if he or she deems one is necessary. N.J.A.C. 13:35-2.6(m)(5). Although the difference between a "focused clinical examination" and any other examination is not clear from the face of the regulation, the regulatory history explains:

> this term is readily understood in the medical community. A patient referred for a diagnostic test

has been sent by the treating practitioner in order to answer a medical diagnosis question or a treatment question. The consultant is expected to perform a clinical examination, <u>when indicated</u>, which, at a minimum, is not necessarily a comprehensive physical examination but, rather, one which brings the specialist's knowledge to bear upon the particular problem to be solved, that is, "focused clinical examination."

[33 N.J.R. 670(a) (Feb. 20, 2001) (emphasis added).]

Accordingly, because the only physical examination to determine "the particular problem to be solved" is a discretionary one under paragraph (m)(5), we agree with Damien that the court incorrectly interpreted paragraphs (m)(3) and (m)(6) as requiring Damien to "examine" patients.

Further, the phrase "medically necessary" does not appear anywhere in the regulation. Those words should be given their ordinary meaning, and the Legislature's definition in N.J.S.A. 39:6A-2(m) is consistent with that meaning:

"Medically necessary" means that the treatment is consistent with the symptoms or diagnosis, and treatment of the injury (1) is not primarily for the convenience of the injured person or provider, (2) is the most appropriate standard or level of service which is in accordance with standards of good practice and standard professional treatment protocols, . . . and (3) does not involve unnecessary diagnostic testing.

[N.J.S.A. 39:6A–2(m); <u>see</u> <u>also</u> N.J.A.C. 11:3-4.2.]

Because part of the definition of "[m]edically necessary" is that the treatment is "the most appropriate standard or level of service," N.J.S.A. 39:6A-2(m), the words "[v]erify the indications for and appropriateness of diagnostic testing" in N.J.A.C. 13:35-2.6(m)(6) (2014) must require less than verifying the test was medical necessary.

Nonetheless, we reject Damien's claim that his mere receipt of "a written or documented referral from a chiropractor, without more, meets the verification requirement" under paragraph (m)(6) and was, in itself, a procedure that meets the requirements of paragraph (m)(3),[10] notwithstanding Damien's argument that extrinsic evidence of the Board's intent, specifically the BME draft minutes, supports his interpretation.[11]

---

[10]  Allstate's opposition brief states Damien argued "documents produced in response to [p]laintiffs' discovery requests for APDI's protocols, policies and/or procedures and employee handbooks and/or manuals . . . rebut [p]laintiffs' claim that APDI did not have any written procedures regarding standard protocols for MRI studies."  Damien makes no such argument in his briefs, so, to the extent he ever made that claim, his failure to brief it operates as a waiver.  539 Absecon Blvd., L.L.C. v. Shan Enterprises Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009).  Further, the discovery documents Allstate references do not indicate any procedure existed for ascertaining whether sufficient clinical data has been provided to justify diagnostic tests.

[11]  Damien also argues that the court failed to make the requisite findings to justify its conclusion that he violated paragraph (m)(3).  However, he does not
(continued)

A-1151-16T4

In 1991, the BME adopted N.J.A.C. 13:35-2.5 in response to the increasing number of diagnostic medical practices where physicians abdicated their medical decision-making to technicians and staff. 23 N.J.R. 2858(a) (Sept. 16, 1991). The BME found this inappropriate delegation of medical duties led to reduced quality of patient care, so N.J.A.C. 13:35-2.5 was adopted to require physicians to implement protocols to avoid unnecessary testing or retesting. Ibid. The BME noted that the regulation would "most likely" have an economic impact on radiologists who "merely attended the office to pick up and provide a reading of the films and authorize bills." Ibid.

In December 1998, pursuant to legislative directive, L. 1998, c. 21, § 12, the BME adopted N.J.A.C. 13:35-2.6 to "govern the validity of diagnostic tests intended to establish medical diagnoses for the purpose of recommending an appropriate course of treatment." N.J. Coal. of Health Care Prof'ls v. N.J. Dep't of Banking and Ins., Div. of Ins., 323 N.J. Super. 207, 227 (App. Div.

---

(continued)
raise that argument in his merits brief, and as we have previously stated, "[r]aising an issue for the first time in a reply brief is improper." Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001). Further, the court's determination that Damien violated section (m)(3), when read in context with the court's other factual findings, e.g. that Damien was not "relieved" of his "duty to verify . . . referrals," support the conclusion that the court determined Damien's mere receipt of a prescription, without more, was not a procedure that satisfied paragraph (m)(3).

1999). N.J.A.C. 13:35-2.6 was also adopted to address the "widespread recognition that the problem of inappropriate diagnostic testing had reached such proportions that individual disciplinary actions by the several health care Professional Boards were insufficient to stem the tide." 33 N.J.R. 670(a) (Feb. 20, 2001). In 2001, N.J.A.C. 13:35-2.5 was repealed, and replaced by amendment of N.J.A.C. 13:35-2.6, in "an effort to avoid diversion of scarce monetary and personnel resources from meeting the legitimate health care needs of the public." 33 N.J.R. 670(a) (Feb 20, 2001).

As originally proposed, N.J.A.C. 13:35-2.6(m)(3) would have required the referral-receiving practitioner to "[a]scertain whether sufficient objective or clinical data have been provided to determine that the requested diagnostic test is appropriate . . . ." 32 N.J.R. 19(a) (Jan. 3, 2000). However, in response to comments, the BME amended that proposed rule and adopted the language that appeared in the regulation throughout the relevant times of this litigation: the referral-receiving practitioner was required only to "[i]nstitute a procedure to assure that sufficient clinical data has been provided to justify the requested test . . . ." N.J.A.C. 13:35-2.6(m)(3) (2005). As the BME noted in its summary of the 2001 amendments to N.J.A.C. 13:35-2.6(m), although "the practitioner need not ascertain him or herself whether there is sufficient

33

objective or clinical data to support the referral," he or she "must institute a procedure that will ensure that such data has been provided." 33 N.J.R. 670(a) (Feb. 20, 2001).

Thus, paragraph (m)(3) required Damien to do more than merely receive a referral, but he was not required to perform a clinical examination to determine the medical necessity of the testing, as the trial court incorrectly held. Instead, paragraph (m)(3) required Damien to institute some procedure to assure himself that the referring physician had provided to Damien clinical data sufficient, in Damien's professional judgment, to justify the requested test. Merely verifying that the referral was from a licensed practitioner was insufficient to satisfy that duty. Indeed, the BME noted that it "expects that the practitioner receiving a patient referral shall implement a procedure to assure that a referring physician has complied with the requirements of subsection (l), to facilitate the exercise of professional judgment on whether and how the referral should be accepted." 33 N.J.R. 670(a) (Feb. 20, 2001). In light of that clear expression of intent, we reject Damien's claims that he was "entitled to presume" the referring practitioner complied with subsection (l) and that Damien's mere receipt of a referral could constitute a sufficient

procedure to enable him to exercise "professional judgment" as to whether a "referral should be accepted." Ibid.[12]

Similarly, with respect to paragraph (m)(6), the notes preceding the proposed regulation explain simply that "[p]articular care shall be exercised when accepting a referral from a practitioner who does not hold a plenary license." 32 N.J.R. 19(a) (Jan. 3, 2000). Paragraph (m)(6) was adopted as proposed. 33 N.J.R. 670(a) (Feb. 20, 2001). Therefore, we conclude that merely receiving a referral and verifying it was from a licensed physician, without more, was insufficient to satisfy either N.J.A.C. 13:35-2.6(m)(3) or (m)(6), and there was no factual dispute that any pre-testing procedure Damien might have employed was limited to, at most, receiving a referral and verifying that it was from a licensed practitioner.

For example, Bhagat testified that APDI did not take new patient histories and that "as long as the patient has a valid prescription from a

---

[12] Although Damien states in a footnote that "[t]here was no claim in this case that any party ever violated [subsection] 2.6(l) of the regulations," the fact remains that Damien was required to institute a procedure to verify the referring practitioner's compliance with that subsection. Damien's claim that he was "entitled to presume" the referring practitioner complied with subsection (l) demonstrates that Damien did not, in fact, institute a procedure to verify the referring practitioner's compliance with subsection (l), and there is no competent evidence in the record to suggest a different conclusion.

qualified registered physician and somebody is going to pay the bill APDI would perform the MRI testing."  Bhagat also testified that the only review or screening of the patient prior to MRI testing was done by the technologist for contraindications, and other APDI staff members provided similar testimony. Further, he testified that APDI used "the same process" for testing patients regardless of who made the referral, as opposed to using particular care when a limited licensee made the referral.

Thus, the undisputed evidence established that, upon receipt of a referral or prescription from a licensed physician, no procedures existed or were employed to assure sufficient clinical data existed or had been provided to justify the compliance with N.J.A.C. 13:35-2.6(m)(3) (2014), and no particular care was used when a referral was made by a limited licensee to comply with paragraph (m)(6).  If the BME intended for receipt of a prescription to satisfy N.J.A.C. 13:35-2.6(m), the BME knew how to express that intention.  See 33 N.J.R. 670(a) (Feb. 20, 2001) (explaining a treating physician may request another physician perform diagnostic testing without providing "a formalized written report" as "a prescription will be sufficient" under former N.J.A.C. 13:35-2.6(l), but omitting any similar language from the summary of the requirements under former N.J.A.C. 13:35-2.6(m)).

## V.

Finally, because there is no competent evidence in the record to support the notion that the trial court was provided with anything more than a draft of the minutes of the BME's meeting to consider at the April 4, 2016 reconsideration hearing, we perceive no abuse of discretion by the court in declining reconsider its decision. See R. 4:49-2; Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Further, even assuming the draft minutes were competent evidence or were adopted by the BME by the time of the April 4, 2016 hearing, we owe no deference to "plainly unreasonable" agency interpretations of a regulation. Hough, 210 N.J. at 200 (quoting In re Election, 201 N.J. at 262). As we have concluded, the interpretation that mere receipt of a referral from a licensed physician constituted compliance with paragraphs (m)(3) and (m)(6) is in direct conflict with the intent of the BME as expressed in 33 N.J.R. 670(a) (Feb. 20, 2001) (stating clearly the BME's expectation that a referral-receiving practitioner would exercise "professional judgment on whether . . . the referral should be accepted").

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION